■ NIKKI F. MILLER, Appellant, v CHARLES S. PIPIA, Respondent. [746 NYS2d 729]

The parties to this divorce action, commenced on November 11, 1999, met in September 1995 in Florida, where the plaintiff had resided all her life. The plaintiff moved to New York in May 1996 into an apartment with the defendant. The parties were married in New York in December 1997. One issue was born of the marriage on April 15, 1998. The parties resided together in New York until September 1999, when the plaintiff, along with the parties' child, flew to Florida for a three-week visit with her family. Later, the defendant flew to Florida for a scheduled weekend visit, and it was at this time that the parties' marriage suffered its final breakdown. The plaintiff and the child remained in Florida and the defendant returned to New York.

By writ of habeas corpus dated October 26, 1999, the plaintiff was directed to return to New York with the child. On November 8, 1999, the parties entered into a written stipulation settling the habeas corpus proceeding, whereby it was agreed that the plaintiff and the child would continue to reside in Florida, with the defendant having 12 days of visitation in New York each month. In her complaint, the plaintiff sought, inter alia, sole custody of the child and permission to relocate the child to Florida. The defendant counterclaimed for sole custody of the child, or an order directing the plaintiff to return to and remain in New York with the child and to afford the defendant liberal visitation. These matters were the subject of the hearing held by the Supreme Court on various days between October 10, 2000, and October 18, 2000. The November 8, 1999, stipulation remained in effect until the Supreme Court issued its order of July 2, 2001, transferring custody to the defendant. By decision and order on motion dated August 15, 2001, this Court stayed enforcement of the order dated July 2, 2001, pending the hearing and determination of this appeal,

and directed the parties to continue to abide by the terms of the November 8, 1999, stipulation.

We recognize that the Supreme Court's determination should be accorded great deference on appeal, since it had the opportunity to assess the witnesses' demeanor and credibility. Nevertheless, the Appellate Division's "authority in custody matters is as broad as that of the trial court" (*Matter of Rosiana C. v Pierre S.,* 191 AD2d 432, 433; *see Matter of Louise E.S. v W. Stephen S.,* 64 NY2d 946, 947; *Young v Young,* 212 AD2d 114, 117). Further, the deference ordinarily given to a trial court's findings is not warranted where its determination "lacks a sound and substantial basis in the record" (*Matter of Rosiana C. v Pierre S., supra* at 433; *see Matter of Sullivan v Sullivan,* 190 AD2d 852, 853; *Matter of Krebsbach v Gallagher,* 181 AD2d 363, 364; *Linda R. v Richard E.,* 162 AD2d 48, 50; *Matter of Robert T.F. v Rosemary F.,* 148 AD2d 449, 450; *Keating v Keating,* 147 AD2d 675, 677). We conclude that the Supreme Court's determination to award custody of the child to the defendant lacks a sound and substantial basis in the record.

The essential consideration in making an award of custody is the best interests of the child (*see Eschbach v Eschbach,* 56 NY2d 167, 171). As is relevant to this case, factors to be considered in determining the child's best interests include the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent (*see Eschbach v Eschbach, supra* at 171-172; *Young v Young, supra* at 117-118). "[T]he existence or absence of any one factor cannot be determinative on appellate review since the court is to consider the totality of the circumstances" (*Eschbach v Eschbach, supra* at 174; *see Young v Young, supra*).

Although both parties were responsible and loving parents, the plaintiff has been the child's primary caretaker since birth, and has established the primary bond with the child. The home environment provided by the plaintiff, despite certain unsupported allegations made by the defendant, provides a more appropriate and comfortable living arrangement for the child. The plaintiff resides in a three-bedroom home with her mother; the child has her own bedroom in Florida which is adjacent to the plaintiff wife's bedroom. The home is very close to that of

other family members, who are able to provide additional support and companionship to the plaintiff and the child. Although the child has her own bedroom in New York in the home of the mother of the defendant, the defendant resides in the separate basement apartment of that home. Thus, the home environment provided by the plaintiff is more suitable for the child than that provided by the defendant.

While it is true that the recommendations of court-appointed experts are but one factor to be considered in making a custody determination and are not determinative, such recommendations are entitled to some weight (see *Young v Young, supra* at 118). Thus, contrary to the Supreme Court's determination, we credit the finding by the court-appointed expert that the plaintiff possesses superior parenting skills in that she is more attuned to the child's feelings and is better suited to provide for the child's emotional and intellectual development (see *Matter of Winslow v Lott,* 272 AD2d 406; *Forzano v Scuderi,* 224 AD2d 385). The expert opined that the defendant husband's narcissistic and controlling personality made it difficult for him to attune to other's feelings.

In addition, the record unequivocally establishes that an award of custody to the plaintiff would not have a significant adverse effect on the child's relationship with the defendant (see *Young v Young, supra* at 118). The plaintiff's testimony clearly evidences her recognition of the need for the child to have two parents involved in her life. The plaintiff has endeavored to foster a strong relationship between the defendant and the child. There is no support in the record for the Supreme Court's determination that the plaintiff fled to Florida in September 1999 with the child with no intention of returning to New York.

The final factor militates in favor of the defendant father in that he is in a financially superior position compared to the plaintiff. However, this one factor is not dispositive (see *Eschbach v Eschbach, supra; Young v Young, supra*).

We also find that the best interests of the child favor permitting the plaintiff wife to remain in Florida with the child. In *Matter of Tropea v Tropea* (87 NY2d 727), the Court of Appeals held that relocation may be permitted if the custodial parent can demonstrate, by a preponderance of the evidence, that the proposed move would serve the child's best interests (see *Matter of Tropea v Tropea, supra*). The factors to be considered "include, but are certainly not limited to each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial

parents * * * the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements. In the end, it is for the court to determine, based on all of the proof, whether it has been established by a preponderance of the evidence that a proposed relocation would serve the child's best interests" (*Matter of Tropea v Tropea, supra* at 740-741; *see Reilly v Schmidt,* 295 AD2d 436; *Matter of Abadinsky v Abadinsky,* 264 AD2d 476; *Harmon v Harmon,* 254 AD2d 456; *Pardee v Pardee,* 246 AD2d 522; *cf. Matter of Huston v Jones,* 252 AD2d 502, 503; *Matter of Mascola v Mascola,* 251 AD2d 414, 415).

After weighing the appropriate factors set forth in *Matter of Tropea v Tropea (supra)*, we find that the child's best interests would not be served by forcing her to move back to New York after having already relocated and becoming settled in Florida. In addition, the evidence that the move was engendered, in part, by the plaintiff's inability to find work in New York which would have compensated her sufficiently to allow her to rent an apartment and pay for child care is unrefuted. "[E]conomic necessity * * * may present a particularly persuasive ground for permitting the proposed move" (*Matter of Tropea v Tropea, supra* at 739; *Matter of Malandro v Lido,* 229 AD2d 541). It is undisputed that the plaintiff has a strong support network which allows her to work full time while the child is either with family members or in day care. The fact that the plaintiff resides in her mother's home with the child is also economically beneficial to the plaintiff. Finally, the plaintiff has expressed her desire for the defendant to have liberal visitation with the parties' child so that the child can continue to develop a strong relationship with her father.

In view of all of the foregoing, we reverse the Supreme Court's order dated July 2, 2001, and award sole custody of the child to the plaintiff. The matter is remitted to the Supreme Court, Queens County, for the purpose of holding a hearing to establish an appropriate visitation schedule for the defendant husband.

The plaintiff's appeal from the order dated October 12, 2001, is dismissed as academic. Altman, J.P., Krausman, Schmidt and Crane, JJ., concur.