■ DAVID KAPLAN, Appellant, v NICOLE TURANO KAPLAN, Respondent. [801 NYS2d 391]—

In an action for a divorce and ancillary relief, the father appeals from so much of a judgment of the Supreme Court, Nassau County (LaMarca, J.), entered September 1, 2004, as, after a nonjury trial, awarded the mother custody of the parties' child and permitted her to relocate, and awarded child support in the sum of $3,925 per month, maintenance in the sum of $7,500 per month for 5 years, and an attorney's fee in the sum of $100,000.

Ordered that the judgment is modified, on the law, the facts, and as a matter of discretion, by (1) deleting the provision thereof awarding child support to the mother in the sum of $3,925 per month and substituting therefor a provision awarding her child support in the sum of $2,836 per month, (2) adding thereto a provision directing that, upon the termination of the father's maintenance obligation, the father's child support obligation shall be upwardly modified to the sum of $4,112 per month, and (3) adding thereto a provision directing that (a) the parties shall jointly consult with each other with respect to the child's education and health, including, but not limited to, decisions pertaining to his special needs arising from his hearing disability, and (b) the parents in their consultation shall always use their best efforts and good faith to arrive at a joint decision in the best interests of the child, but that the mother shall have final decision-making authority; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements.

In a child custody determination, a court must decide "what is for the best interest of the child, and what will best promote its welfare and happiness" (Domestic Relations Law § 70 [a]; *Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Miller v Pipia*, 297 AD2d 362, 364 [2002]). Factors to be considered include "the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (*Miller v*

*Pipia, supra* at 364). The "existence or absence of any one factor cannot be determinative on appellate review since the court is to consider the totality of the circumstances" (*Eschbach v Eschbach, supra* at 174; *see Miller v Pipia, supra* at 364; *Young v Young*, 212 AD2d 114, 118 [1995]). The trial court's determination must be "accorded great deference on appeal, since it had the opportunity to assess the witnesses' demeanor and credibility" (*Miller v Pipia, supra* at 364, *see Eschbach v Eschbach, supra* at 173). Only where the determination "lacks a sound and substantial basis" should it be disturbed (*Miller v Pipia, supra* at 364).

Given that the mother was supportive of visitation, that both parties are fit and loving parents, each capable of caring for the child, that the mother was available to care for the child and address his special needs, and that the mother was the primary caretaker since the child's birth, the trial court properly awarded custody of the parties' child to the mother (*see Cohen v Merems*, 2 AD3d 663 [2003]; *Miller v Pipia, supra*; *Forzano v Scuderi*, 224 AD2d 385 [1996]). However, given the foregoing, we deem it appropriate to modify the judgment to add a provision directing that the parties, in good faith, jointly consult with each other regarding decisions pertaining to the child's education and health, with the mother having final decision-making authority.

Contrary to the father's contention, the trial court properly weighed the relevant factors set forth in *Matter of Tropea v Tropea* (87 NY2d 727 [1996]), and determined that the mother's relocation to Chappaqua, in Westchester County, will serve the best interests of the child.

Further, in calculating the amount of the child support award pursuant to the Child Support Standards Act (hereinafter CSSA) (*see* Domestic Relations Law § 240 [1-b]), the trial court opted to apply the child support percentage (in this case 17%) to the combined parental income over $80,000. The father contends that the Supreme Court erred in failing to articulate a reason for applying the statutory percentage to the combined parental income over $80,000. We disagree. The court's 50-page decision after trial meticulously described the parties' respective circumstances, and there is "sufficient record indication" that application of the statutory percentage was justified (*see Matter of Cassano v Cassano*, 85 NY2d 649, 655 [1995]). The mother was not working at the pertinent time, and was attending to child care, including the child's special needs. The father was working, and was earning in excess of $400,000 per year. We conclude that the Supreme Court providently exercised its

discretion in capping his annual income at $300,000. Thus, as the Supreme Court correctly concluded, the combined parental income was $300,000, and the father's percentage obligation for child support was 100%. However, in making its child support determination, the Supreme Court failed to deduct from the father's income the amount of maintenance ($90,000 per year) that he was ordered to pay to the mother (*see* Domestic Relations Law § 240 [1-b] [b] [5] [vii]). The court further erred in its FICA calculation.

Rather than remit the matter to the Supreme Court, Nassau County, for a recalculation of child support, in the interest of judicial economy, we do so. Thus, after deducting from the annual income of $300,000, the sums of $90,000 for maintenance and $9,768 for FICA, and applying the 17% statutory rate, we conclude that the father's child support obligation should be the sum of $2,836 per month. Upon termination of the father's maintenance obligation, his child support obligation shall be upwardly modified to the sum of $4,112 per month (*see* Domestic Relations Law § 240 [1-b] [b] [vii] [C]).

The mother was awarded maintenance in the sum of $7,500 per month for 5 years. Contrary to the father's contention, the maintenance award was a proper exercise of the trial court's discretion, taking into consideration the relevant factors, including the parties' pre-separation standard of living, the separate property retained by each party and their respective net equitable distributive awards of marital property, the mother's absence from the work force as a certified social worker for most of the period following the birth of the parties' special needs child on January 19, 2001, the mother's continued role as the primary caretaker of a special needs child, the father's significantly higher earning capacity as a successful partner in a radiology practice, and the short duration of the parties' marriage (*see* Domestic Relations Law § 236 [B] [6] [a]; *Comstock v Comstock*, 1 AD3d 307 [2003]; *Alvares-Correa v Alvares-Correa*, 285 AD2d 123 [2001]; *Finkelson v Finkelson*, 239 AD2d 174 [1997]; *Milewski v Milewski*, 197 AD2d 562 [1993]).

The attorney's fee award to the mother was a proper exercise of the trial court's discretion (*see* Domestic Relations Law § 237 [a]; *Charpié v Charpié*, 271 AD2d 169 [2000]; *Vicinanzo v Vicinanzo*, 193 AD2d 962 [1993]; *Sclafani v Sclafani*, 178 AD2d 830 [1991]). H. Miller, J.P., Cozier, Ritter and Fisher, JJ., concur.