■ In the Matter of MARIE ANNETTE M., a Child Alleged to be Neglected. MARIA M., Respondent; COMMISSIONER OF THE ADMINISTRATION FOR CHILDREN'S SERVICES OF THE CITY OF NEW YORK, Appellant. BENJAMIN C. et al., Nonparty Respondents. In the Matter of BETTY M.-C. et al., Respondents. COMMISSIONER OF THE ADMINISTRATION FOR CHILDREN'S SERVICES OF THE CITY OF NEW YORK, Appellant, et al., Respondent. [803 NYS2d 518]—

Orders of disposition and guardianship, Family Court, Bronx County (Sidney Gribetz, J.) entered on or about December 23, 2003, which placed the child with and issued letters of guardianship to nonparty respondents/petitioners-respondents Benjamin C. and Betty M.-C. under the supervision of the New York City Administration for Children's Services (ACS), unanimously reversed, on the law and the facts, without costs, the child placed with ACS for a period of 12 months, the letters of guardianship vacated and the guardianship petition dismissed.

On January 17, 2003, Maria M. gave birth to the child who is the subject of these proceedings, Marie Annette M. Prior to giving birth, the mother met respondents Benjamin C. and Betty M.-C. when all three were receiving support services from the Fortune Society. They became good friends and the mother believed they would be a good resource in the event of an emergency. On May 2, 2003, a neglect proceeding was filed against the mother based on her failure to comply with her drug treatment program and her leaving the child with Benjamin C. and Betty M.-C. on April 16, 2003, and not contacting them since. Family Court remanded the child to the custody of the New York City Administration for Children's Services with the specification that she be placed initially with Benjamin and Betty.

In early May 2003, ACS conducted an expedited home study and learned that Betty previously had been convicted of manslaughter and Benjamin of criminal sale of a controlled substance, and that both had recently been released from prison. On May 14, 2003, deeming the pair unsuitable, ACS removed the child from Betty and Benjamin's home and placed her in a nonkinship foster home.

On or about May 20, 2003, Benjamin and Betty petitioned for guardianship of the child. Meanwhile, the mother defaulted in the neglect proceeding and the court entered a finding of neglect against her. In December 2003, a combined hearing on the disposition of the neglect proceeding and the guardianship peti-

tion was held. In the order appealed from, Family Court ordered the child placed with Benjamin and Betty under the supervision of ACS for 12 months and awarded guardianship to them.

On appeal, ACS contends that given Betty and Benjamin's past drug use and felony convictions, and Benjamin's recent relapses into drug use, Family Court abused its discretion in placing the infant with them. We agree. The paramount issue in a dispositional hearing is the best interests of the child (*Matter of Mary Liza J. v Orange County Dept. of Social Servs.*, 198 AD2d 350 [1993], *lv denied* 83 NY2d 755 [1994]; *Matter of Valerie Leonice T.*, 107 AD2d 327, 329 [1985]). Although the question of placement is a matter of discretion, that discretion is not unlimited and must have a sound and substantial basis in the record (*see Matter of Darlene T.*, 28 NY2d 391 [1971]).

"In making a determination of placement, Family Court must consider not only the custodian's ability to provide adequate shelter, but all the facts and circumstances relevant to the child's best interest" (*Matter of Harriet U. v Sullivan County Dept. of Social Servs.*, 224 AD2d 910, 911 [1996]; *see Matter of Megan G.*, 291 AD2d 636, 640 [2002]). Benjamin's and Betty's criminal history and past drug abuse and Benjamin's recent drug relapses are relevant factors in this determination and, in our view, establish that they were not shown to be "suitable persons" with whom the child could be safely placed.

As mentioned, Betty had been convicted of manslaughter in 1989 and remains on parole. She also has a history of drug abuse. Benjamin has a lengthy criminal history including a conviction for criminal sale of a controlled substance in the third degree in 1997, for which he was sentenced to prison. He was released in 2002 and remained on parole until June 2004. He has had positive drug tests as well, one for morphine and codeine and two for benzodiazepine, and was using OxyContin and antidepressants. Most significantly, Benjamin suffered two drug relapses involving heroin in March and May 2003, proximate to the period in which the child was in his and Betty's care. It appears that on those occasions when Benjamin has had relapses, he has been under stress. In our view, Benjamin's stress-related drug relapses raise serious concern as to his ability as a caregiver, since raising an infant on a day-to-day basis ordinarily entails significant stress. Additionally, the fact that Benjamin and Betty returned the child to the natural mother at a time when they knew she was using drugs and never reported to an appropriate agency that she had left the child with them casts serious doubt on their judgment.

In contrast to the above, the hearing evidence showed that

the pre-adoptive home where the child presently resides is stable, with a working father, stay-at-home mother, and other children. The foster parents have been meeting the child's needs and attending her medical appointments. We have no difficulty in concluding that the pre-adoptive home is a more stable environment and that placement there is in the child's best interests. Concur—Mazzarelli, J.P., Andrias, Friedman, Gonzalez and Catterson, JJ.