Matter of Curtis L.S. v Janice P.W. (2006 NY Slip Op 51532(U))

[*1]

Matter of Curtis L.S. v Janice P.W.

2006 NY Slip Op 51532(U) [12 Misc 3d 1191(A)]

Decided on August 2, 2006

Family Court, Richmond County

DiDomenico, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 2, 2006

Family Court, Richmond County
In the Matter of a Custody/ Visitation Proceeding Curtis L.S., Petitioner, Janice P.W., Respondent.
XXXXXX

Attorneys on this Case:
Marc Berk, Esq. for Petitioner
2344 Victory Boulevard
Staten Island, NY 10314
Mario Acunzo, Esq. for Respondent
31 Hasbrouck Road
Staten Island, NY 10304
Lori Landowne, Esq.- Law Guardian
Legal Aid Society
60 Bay Street
Staten Island, NY 10301

Catherine M. DiDomenico, J.
Petitioner Father, Curtis S., filed a Petition seeking permission to relocate from Brooklyn, New York to Chapel Hill, North Carolina with his six year old son, Curtis Allen S. ("Allen") (d.o.b. 8/22/99).
On May 17, 2004, the Administration for Children's Services ("ACS") filed a Neglect Petition against the Respondent Mother, Ms. W., alleging, among other things, that she physically assaulted Allen's sibling, Antoinette, in the presence of Allen. Antoinette and Allen were remanded to the care of ACS. On April 26, 2004, Petitioner Father filed a Petition for Custody. On July 8, 2004, after a trial, a finding of neglect was entered against the Respondent Mother and Petitioner Father was granted custody of Allen. Visitation to the Respondent Mother was granted upon mutual agreement by the parties to be supervised by the maternal aunt, Ms. Joyce J.
An Order of Disposition was entered as to Antoinette on August 3, 2004. Antoinette was placed with ACS for a period of up to twelve months. Respondent was to observe the following conditions: cooperate with ACS and Agency services, referrals and supervision; complete alcohol rehabilitation; visit Antoinette regularly; maintain adequate housing; maintain an adequate source of income; plan for the return of the child; complete an anger management program; and comply [*2]with a one year Final Order of Protection on behalf of Antoinette. A Petition to Terminate the Parental Rights of Respondent Mother as to Antoinette on the grounds of permanent neglect is currently pending before this Court.
On July 28, 2005, Respondent Mother filed a Petition for Modification of an Order of Custody requesting that Petitioner Father be prevented from relocating with Allen to North Carolina. On August 1, 2005, the Hon. Ralph Porzio ordered that Allen not be relocated without prior court approval. On March 22, 2006, Respondent Mother filed a Petition for Modification of an Order of Visitation alleging that Ms. Joyce J. could no longer supervise visits. Respondent Mother requested that she be granted unsupervised visits, unrestricted daily contact, and visits every Monday and Friday from 3:30 pm until 5:30 pm at the Brooklyn Public Library.
Petitioner Father's relocation petition and Respondent Mother's visitation petition were the subject of a fact finding hearing held on July 10, 11, 19 and 20, 2006. At the fact finding hearing, Petitioner Father testified and also called Dr. Margit W., a licensed Family Court Services psychologist, as an expert witness. Dr. W.'s report was entered into evidence without objection (Petitioner's #1). Respondent Mother testified on her own behalf. The Law Guardian called no witnesses.
After hearing the testimony of all three witnesses, and assessing their credibility, this Court credits the testimony of Petitioner Father and Dr.W. The Court does not credit at all the testimony of Respondent Mother.
Testimony at Fact Finding
Petitioner Father
Petitioner Father was awarded custody of Allen in July 2004. He testified that he is currently employed as a personal trainer earning approximately $20,000.00 to $30,000.00. Petitioner Father testified that he would like to relocate with Allen to Chapel Hill, North Carolina where he has an opportunity to be a Personal Trainer Director earning between $40,000.00 to $50,000.00. Petitioner Father's mother and aunt, whom he and Allen had lived with in New York and whom they intend to live with in Chapel Hill, have already relocated to Chapel Hill and are residing in a three bedroom apartment in a gated community. Petitioner Father and Allen would each have their own room in paternal grandmother's home. Petitioner Father researched the school system on the internet and communicated with the principal of the school Allen would be attending. He testified that he was impressed with the school's computer program and that the school is a five-minute walk from the home and a three minute walk from the job Petitioner Father hopes to secure. While Petitioner Father acknowledges that Allen is currently doing well in school and has no special needs, Petitioner Father believes he would be able to spend more time with Allen and would be able to offer Allen a better quality of life with the support of his extended family. Petitioner Father's mother and aunt are retired and would provide child care for Allen while Petitioner Father works.
[*3]
Petitioner Father testified that since his mother and aunt relocated to North Carolina he is currently staying with friends while Allen lives with his maternal aunt, Ms. Joyce J. Petitioner Father sees Allen every day, taking him to and from school and karate.
Petitioner Father testified that the maternal aunt, Ms. Joyce J., supervised visits until October, 2005. From July 2004 to December 2004, Respondent Mother visited with Allen at Ms. J.'s home twice a week for approximately two hours. From January 2005 to August 2005, Respondent Mother visited only once. Respondent Mother sporadically calls to speak with Allen, and has never provided child support.
Dr. W.
Dr. W. testified that she interviewed both Petitioner Father and Respondent Mother and had a play interview with Allen. Dr. W. recommended that Petitioner Father be allowed to relocate with monthly visits with the Respondent Mother. Dr. W. did not recommend unsupervised visits with the Respondent Mother because of Respondent Mother's violent episodes with Antoinette. On this subject, Dr. W. noted that Respondent Mother seemed to feel that the physical force she used on Antoinette was in some way "justified." Tr. 7/1//06, p. 18, l. 21. 

Dr. W.'s report concludes: "Mr. W. is a bright, articulate woman who may or may not have a substance abuse problem. What does seem clear, however, is that she has an impulse-control problem, particularly around managing her angry and needy feelings. While she has intellectual perspective on a number of issues, she seems to lack the necessary emotional perspective. Emotionally, she seemed to feel it reasonable that she strike her child back. Additionally, she has the stressors of multiple physical problems. She does appear to care about her children, at least at some level, but doesn't seem capable of handling the many vicissitudes of life, children and her feelings on a full-time basis. Sadly, she does not seem to think that psychotherapy is a useful option for her." Petitioner's #1, page 7. 
Respondent Mother
Respondent Mother testified that, in May of 2004, her children, Antoinette and Allen, were removed from her care after what she referred to as a "domestic dispute" with Antoinette. Antoinette was twelve years old at the time and the altercation left bruises on Antoinette's body. Respondent Mother was arrested and the children were removed. At that time Allen went to live with Petitioner Father. Visits between Respondent Mother and Allen were to be supervised by her aunt, Ms. J.
From May 2004 to September 2004, she visited with Allen twice a week at her aunt's home. Respondent Mother further had hip surgery on September 28, 2004 and was hospitalized for three and a half weeks. During that time, her uncle brought Allen to visit. She did not visit with Allen from October 2004 to January 2005. Her uncle brought Allen to visit in January 2005. She completed her physical recuperation in April 2005 and had a visit with Allen at that time. From [*4]January to April 2005, Respondent Mother testified that she attempted to call Petitioner Father everyday but only spoke with Allen sporadically. A visit occurred in June 2005, and then at the end of August 2005. Respondent Mother learned that Allen was relocating to North Carolina from Allen at the end of July 2005.
During cross-examination by the Law Guardian, Respondent Mother testified that she did not visit with Allen because of actions of Petitioner Father, the agency, and because she was not given adequate assistance after her hip surgery. Respondent Mother admits she did not file any petitions to enforce her right to see Allen until July 28, 2005, when she learned of Petitioner Father's intention to relocate Allen. Respondent Mother claimed that she did not realize she could enforce her rights in Court, however, this statement is belied by her frequent court appearances in connection with the Neglect and Termination of Parental Rights cases for Antoinette and the instant pro se Petitions actually filed by Respondent Mother.
Respondent Mother testified that she was granted unsupervised visits, however, they were suspended in October 2005 when she was arrested after another physical altercation between her and Antoinette during which she struck Antoinette with a metal stove grate. This incident, during which Antoinette sustained physical injuries, occurred after Respondent Mother completed mandated parenting and anger management courses and while Respondent Mother was enjoying one of only four unsupervised visits that had been permitted.

The Applicable Law
Where a custodial parent seeks permission to relocate a child, the request "must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child." Tropea v. Tropea, 87 NY2d 727 at 739 (1996). The issue is whether the parent requesting the relocation has established by a preponderance of the evidence that relocation would be in the child's best interest. Id. Factors to be considered in determining the appropriateness of relocation include, but are not limited to, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements." Id. Where there are educational, emotional and economic benefits for the child, relocation should be granted. Aziz v. Aziz, 779 NY2d 539 (2nd Dept. 2004). Applying the established principles to this case, this Court does find that Petitioner Father has established, by a preponderance of the evidence, that relocation would be in Allen's best interests.
[*5]Findings of Fact & Conclusion of Law
This Court credits the testimony of Petitioner Father and Dr. W. Petitioner Father submits that the move to North Carolina will improve the quality of life for both himself and the child. Petitioner Father offers that he has greater opportunity for employment and extended family in North Carolina. Petitioner Father would be able to spend more time with the child and has a large support system there which is no longer present in New York. This Court credits Petitioner Father and finds that he has a good faith basis for relocating, namely to offer his son a better life surrounded by his aunt, grandmother and other relatives.
Petitioner Father clearly recognizes the importance of maintaining a relationship between Allen and Respondent Mother and his sister. See Miller v. Pipia, 297 AD2d 362 (2nd Dept. 2002); Boyer v. Boyer, 281 AD2d 953 (4th Dept. 2001). Petitioner Father offers a realistic and feasible alternative visitation schedule, specifically, he will bring Allen one weekend a month for visits with the Respondent Mother and separately, with Antoinette. This Court credits Petitioner Father's testimony in that he will continue to foster a relationship between Allen, his sister and Respondent Mother. 
This Court further finds that Respondent Mother's visitation has been so inconsistent and sporadic that it is not clear that relocation would substantially interfere with her rights as a practical matter. See Ira S. v. Lauren S., 21 AD3d 288 (1st Dept. 2005) (Family Court did not err in refusing to conduct hearing on issue of relocation where non-custodial parent had not made use of existing visitation rights). Respondent Mother refuses to assume any responsibility for allowing months to pass without seeing Allen or to even telephone to inquire how he was doing. Indeed, it was not until Respondent Mother discovered (through Allen) that Petitioner Father wanted to relocate that she took concrete steps to assert her rights. Further, this Court notes that Respondent Mother assumed no responsibility for the fact that custody of Allen was granted to Petitioner Father as the final disposition of a neglect case filed against her in which Allen was one of the subject children, nor that unsupervised visits were suspended when, during one of only four unsupervised visits, she physically assaulted the child Antoinette. This Court does not credit at all Respondent Mother's testimony that her acts of physical violence against Antoinette occurred as part of a "domestic dispute" in which she was compelled to "defend" herself against this then 12 year old child.
Finally, although the Respondent Mother is said to have completed court mandated anger management programs, to this day, she evidences little ability to control her frustration or her temper. During the fact-finding hearing, she became increasingly angry and hostile in response to questioning by counsel other than her own attorney to the degree that this Court offered to take a recess so that she might compose herself.
Accordingly, Petitioner Father's Petition to relocate to North Carolina is granted. Respondent Mother's Petitions to prevent the relocation, for unsupervised visits, and for violation of her visitation rights, are denied.
[*6]
Disposition
As this Court does not believe sufficient information exists upon which an informed decision can be made with respect to what visitation is appropriate between Respondent Mother and Allen, this matter is adjourned for disposition. Respondent Mother is to undergo a psychiatric evaluation through ACS. The evaluation shall include a full psychiatric assessment of Respondent Mother and specifically identify what, if any, risk factors would exist should unsupervised visits with Allen be permitted.
Respondent Father is allowed to relocate with Allen to Chapel Hill, North Carolina and to register him in school in Chapel Hill forthwith. Pending disposition, Respondent Father shall produce Allen one weekend a month for a supervised visit with Respondent Mother for approximately four hours. Until such time as a mutually agreeable third party is available to supervise the visits, Petitioner Father shall supervise the visits in such public or other place as these parties may agree.
E N T E R:
____________________________
 CATHERINE M. DIDOMENICO
 JUDGE, FAMILY COURT
 RICHMOND COUNTY
Dated:Staten Island, New York
August 2, 2006