■ In the Matter of CHRISTOPHER M. ESPOSITO, Appellant, v LINDA SHANNON, Respondent. [823 NYS2d 159]—

In a child custody proceeding pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Suffolk County (Margolin, Ct. Atty. Ref.), dated February 3, 2006, which, after a hearing, denied his petition and granted the maternal aunt's cross petition for custody of the subject child.

Ordered that the order is reversed, on the law and the facts, without costs or disbursements, the petition is granted, the cross petition is denied, and the matter is remitted to the Family Court, Suffolk County, for the entry of an order fixing the terms and conditions of the transfer of custody from the maternal aunt to the father, to be accomplished on or before August 24, 2006, and establishing transitional contact with the maternal aunt consistent herewith.

This appeal involves a custody dispute between the child's maternal aunt and the child's father. The child is now 12 years of age. Shortly after she was born, the mother and father, who were not married, placed her in the care of her maternal grandmother. When the child was two years old, the father, who then had a drug problem, moved to Florida. Although he has had limited contact with the child since then, he has provided child support for several years and has made regular attempts to communicate with her. The father has since overcome his drug problem, established his own business in Florida, married, and set up a household there.

When the child was seven years old, the mother died, and the child remained with her maternal grandmother. When the child was nine years old, the father unsuccessfully petitioned the

Family Court for joint custody with the maternal grandmother. The maternal grandmother died when the child was 11 years old, and the child took up residence with her maternal aunt, the maternal aunt's girlfriend, and the girlfriend's two daughters, who were a few years older than the child. The father again petitioned the Family Court, this time for sole custody, and the maternal aunt cross-petitioned for custody. After a hearing, the Family Court denied the father's petition, granted the cross petition, and awarded custody of the child to the maternal aunt. We reverse, and, inter alia, grant the petition.

"The parent has a 'right' to rear its child, and the child has a 'right' to be reared by its parent. However, there are exceptions created by extraordinary circumstances, illustratively, surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 546 [1976]). A natural parent may not be deprived of custody of his or her child absent such extraordinary circumstances (*see Matter of Carosi v Bloom*, 225 AD2d 692 [1996]; *see also Matter of Koch v Andres*, 299 AD2d 411, 411-412 [2002]; *Matter of Odums v Metcalf*, 276 AD2d 794, 795 [2000]). A nonparent seeking custody of a child against the wishes of a parent has the burden of establishing the existence of such extraordinary circumstances (*see Matter of Lynda A.H. v Diane T.O.*, 243 AD2d 24, 26 [1998]).

In the instant proceeding, the maternal aunt failed to satisfy that burden (*see Matter of Nadia Kay R.*, 125 AD2d 674 [1986]; *Matter of Merritt v Way*, 85 AD2d 666, 667 [1981], *affd* 58 NY2d 850 [1983]). The record reflects that the father has paid child support since 1998 and that even during the years when the father did not see the child for extended periods, he called her on an infrequent, but nonetheless regular, basis and sent her cards and gifts. As his personal and financial situation improved, moreover, his contact with the child increased, to the point where, after the mother's death, he traveled several times each year from Florida to spend weekends with her in New York. His attempts to bring her to Florida to spend time with his new family were unfortunately impeded by the maternal aunt's demand that he pay for her, as well as the maternal grandmother, to accompany the child on such visits. On these facts, it cannot be said that the father has relinquished his superior right to custody, as it must in order for extraordinary circumstances to have been demonstrated (*see Matter of Campo v Chapman*, 24 AD3d 439 [2005], *lv denied* 6 NY3d 709 [2006]; *Matter of Rudy v Mazzetti*, 5 AD3d 777 [2004]). While the child's rela-

tionship with the maternal aunt is significant, extraordinary circumstances are not established merely by showing that the child has bonded psychologically with the nonparent (*see Matter of Cambridge v Cambridge*, 13 AD3d 443, 444 [2004]; *Matter of Lynda A.H. v Diane T.O.*, *supra* at 26-27; *Matter of Burghdurf v Rogers*, 233 AD2d 713, 715 [1996]; *Matter of Gray v Chambers*, 222 AD2d 753, 754 [1995]; *Matter of Michael G.B. v Angela L.B.*, 219 AD2d 289, 292 [1996]; *Matter of Bisignano v Walz*, 164 AD2d 317, 320 [1990]; *cf. Matter of Michael Paul T. v Thomas R.*, 124 AD2d 970 [1986]).

In a custody contest between parent and nonparent, the question of best interest is not reached absent a showing of such extraordinary circumstances (*see Matter of Merritt v Way, supra*, 58 NY2d at 852-853). Because the evidence here did not persuasively establish that the father abandoned, surrendered, or otherwise forfeited his parental rights (*see Merritt v Way, supra*), the inquiry was at an end, and the best interest review engaged in by the Family Court was not warranted (*see Matter of Male Infant L.*, 61 NY2d 420, 427 [1984]). Nevertheless, even if extraordinary circumstances were present here, we would conclude that the best interest of the child requires that custody be awarded to the father.

In determining an issue of custody, "[t]he court must look at the totality of circumstances, and consider, inter alia, 'the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent' " (*Zafran v Zafran*, 306 AD2d 468, 469 [2003], quoting *Miller v Pipia*, 297 AD2d 362, 364 [2002]; *see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]). Although there is little doubt that the child has psychologically bonded with her maternal aunt to some degree, "[t]he degree of bonding is simply one factor among the totality of the circumstances considered by Family Court" (*Matter of Austin v Herbert*, 22 AD3d 897, 899 [2005]; *see Matter of Bruce BB. v Debra CC.*, 307 AD2d 408, 409 [2003]).

Here, the father's household consists of himself, his wife, to whom he has been married since 2000, and two of the wife's grandchildren. The father is now the owner of a business in the construction industry. Although he has a history of drug addiction and was convicted of driving while intoxicated, for which he was sentenced to three months' incarceration, it is uncontro-

verted that he has received treatment for his drug and alcohol problems and has no criminal record for the past five or six years. The wife is a licensed practical nurse and the Family Court found that she "would obviously be a caring and effective parent figure." There is no evidence that she has ever been convicted of a crime.

The maternal aunt's household presents a different picture. Both the maternal aunt and the woman with whom she lives have been convicted of serious crimes. The aunt was convicted of the sale of marijuana in 1993, attempted robbery in 1998, attempted petit larceny in 2000, and insurance fraud in 2003. After a period of incarceration as a result of the insurance fraud conviction, she was released on parole, but violated that parole and pleaded guilty to a lesser charge after being accused of loitering with a crack pipe. She was on parole at the time of the custody hearing. In addition, the maternal aunt's driver's license has been suspended on several occasions and she has been convicted of driving without a license numerous times. The aunt's companion has been convicted of grand larceny and driving without a license, and was on probation as a result of the latter conviction at the time of the hearing. The companion's brother, who lived in the house for a period of time while the child resided there, had been convicted of grand larceny as well. In addition, the maternal aunt's brother, who has had extensive contact with the child, has been convicted of petit larceny, driving with a suspended license, and assault. He was also on probation at the time of the hearing.

While we recognize that the Family Court had the opportunity to hear directly from the parties to this matter, and its determination should therefore be accorded deference on appeal, our "authority in custody matters is as broad as that of the trial court" (*Matter of Rosiana C. v Pierre S.,* 191 AD2d 432, 433 [1993]; *see Matter of Louise E.S. v W. Stephen S.,* 64 NY2d 946, 947 [1985]; *Miller v Pipia, supra* at 364; *Young v Young,* 212 AD2d 114, 117 [1995]), as is our responsibility. The presence in the household of persons with records of recent criminal activity is a substantial factor in a best interest analysis that militates against an award of custody (*see Matter of Tompkins v Holmes,* 27 AD3d 846, 847 [2006]; *Matter of Dunaway v Espinoza,* 23 AD3d 928, 929 [2005]; *Matter of Marie Annette M.,* 23 AD3d 167, 169 [2005]; *Matter of Grayson v Fenton,* 13 AD3d 914 [2004]). Here, that factor outweighs the relationship that the child has developed with the maternal aunt. The proper exercise of our responsibility here thus requires that the father's petition for custody of the child be granted.

Although the Family Court is without authority to award visitation to the maternal aunt (*see Matter of Alison D. v Virginia M.*, 77 NY2d 651 [1991]; *Matter of Ronald FF. v Cindy GG.*, 70 NY2d 141 [1987]), the best interest of the child, in the unique circumstances presented here, nevertheless require that the transfer of custody to the father be accomplished in a manner that, while not inconsistent with the child's educational needs, recognizes that the child's only consistent emotional attachment, since the death of the maternal grandmother, has been to the maternal aunt. For this reason, we remit the matter to the Family Court, Suffolk County, to establish transitional provisions that provide for the child to reside with the father in sufficient time for her to be in attendance in school at the commencement of the upcoming academic year, but allow for contact with the maternal aunt over a reasonable period of time to allow the emotional well-being of the child to be protected. Miller, J.P., Spolzino and Lunn, JJ., concur.

Luciano, J., dissents, and votes to affirm the order with the following memorandum, in which Rivera, J., concurs. The Family Court found that the maternal aunt of the 12-year-old girl who is the subject of this proceeding established that extraordinary circumstances existed which triggered a best-interest determination, and that it was in the best interest of the child for her to remain in the custody of her maternal aunt. The Family Court conducted an in camera interview of the child with the Law Guardian, and heard and saw the witnesses at the hearing. Thus, the Family Court could evaluate the testimony, character, temperament, and sincerity of the parties. Its determination has a sound and substantial basis in the record, and should not be set aside by this Court (*see Matter of Rudy v Mazzetti*, 5 AD3d 777 [2004]). Further support for the Family Court's determination can be found in the recommendation of the Law Guardian that custody of the child remain with the maternal aunt, predicated upon the child's "extremely strong preference," of which the father was aware, as well as the Law Guardian's opinion that "there is a significant likelihood, that a transfer of custody to [the child's] father would be detrimental to her mental health and well being," a finding which the Family Court expressly agreed with in its determination (*see Young v Young*, 212 AD2d 114 [1995] [recommendations of Law Guardian, while not determinative, are entitled to some weight unless contradicted by the record]).

The majority rejects the Family Court's finding that the maternal aunt established extraordinary circumstances, opining that it was not established that the father relinquished his

superior right to custody and that the maternal aunt merely showed that she and the child psychologically bonded. However, in finding extraordinary circumstances, the Family Court relied upon the fact that the father has not played any significant part in the child's life since her birth. While the majority notes that the father has paid child support since 1998, it fails to mention that the child was already five years old at that time, and that he never paid child support until required to do so by court order. Moreover, the majority does not mention that the father successfully petitioned the Family Court to stop paying child support, as of July 19, 2005, the date of the maternal grandmother's death, and at the time of the custody hearing, was not paying any child support. Thus, in truth, the father has never voluntarily paid child support.

The majority also gives full credence to the father's testimony that the grandmother and maternal aunt impeded his attempts to have the child visit him in Florida, without acknowledging the testimony of the maternal aunt and uncle that it was the child who did not want to go to visit the father alone in Florida. It is inappropriate, on this record, to blame the maternal relatives for the father's lack of visitation with the child, especially considering that it was the father who elected to move far away from the state where his only child resides, and never petitioned the court for visitation. Further indicative of the father's lack of active interest in the child was his testimony that he did not know what the child's learning difficulties were, and had never made any effort to find out.

The Family Court's finding of extraordinary circumstances has a sound and substantial basis in the record, considering that the father voluntarily surrendered the child to her maternal relatives when she was three months old, moved out of state, had, at best, up to and including the time of the hearing, sporadic contact with her, and never voluntarily paid child support, as well as the undisputed evidence of a strong psychological bond between the child and her maternal aunt, who has been profoundly involved in the child's life since birth (*see Matter of Wilson v Smith,* 24 AD3d 562 [2005]; *Matter of Campo v Chapman,* 24 AD3d 439 [2005], *lv denied* 6 NY3d 709 [2006]; *Matter of DePaola v Corrales,* 303 AD2d 586 [2003]; *Matter of Parker v Tompkins,* 273 AD2d 890 [2000]; *Matter of Michael G.B. v Angela L.B.,* 219 AD2d 289 [1996]; *Matter of Pauline G. v Carolyn F.,* 187 AD2d 589 [1992]).

In addition, I respectfully disagree with the majority's finding that it is in the child's best interest for custody to be transferred to the father. As noted in the Family Court's decision, the child

had never met the father's wife, whom he married in 2000, until after the hearing on this matter was commenced, and had not met the father's wife's two grandchildren, who lived with them, at all. In contrast, the testimony established that the child had a close and loving relationship with the maternal aunt's domestic partner and her two daughters, whom she considered her sisters. Moreover, while admittedly not binding, the preference of a 12-year-old child should not be lightly disregarded, especially where, as here, the transfer in custody will take her far away from the only home and family she has ever known, effectively putting her entire world into upheaval (*see Koppenhoefer v Koppenhoefer,* 159 AD2d 113 [1990] [while express wishes of child are not controlling, they are entitled to great weight, especially where the child's age and maturity would make her input particularly meaningful]). It is not speculative to find that such a transfer will be detrimental to the child, who has already suffered an undue amount of tragedy in her young life.

At the oral argument of this appeal, the Law Guardian for the child reported to the Court concerning a visit that the child had with the father in Florida for approximately one week after the Family Court's decision was rendered and during the pendency of this appeal. He stated that the child told him that while she had a good time, she missed her aunt terribly. Further, she reported that the father spent no time alone with her during the visit, and that she was uncomfortable with the living arrangements and the father's wife's two grandchildren. She reiterated her resolute preference to live with her aunt.

I cannot dispute that the maternal aunt's criminal history is a relevant consideration, and I do not downplay its seriousness. In this case it is the strongest factor militating against finding that an award of custody to her is in the child's best interest. I nevertheless believe that this factor must be considered in light of its impact on the child. The undisputed evidence here is that the child is thriving in the maternal aunt's custody. She is doing well in school. She has friends and is happy. Despite extensive questioning of the maternal aunt during her testimony about her criminal history, there was simply no evidence adduced which related that history to the aunt's parenting, or to the well-being of the child. Moreover, the Family Court, which saw and heard the maternal aunt testify, and was thus in the best position to assess her demeanor and credibility, stated in its decision that "all evidence shows that she has turned her life around."

It is noted that, as a practical matter, the Family Court's deci-

sion strikes a better balance than that of the majority. In addition to granting the maternal aunt custody of the child, the Family Court awarded the father liberal visitation. As the matter now stands, with the father having been granted custody of the child, there is a genuine likelihood that her relationship with the maternal aunt will be severed. Although the maternal aunt has been involved in the child's life since birth, and is the person to whom the child is the most psychologically bonded, the maternal aunt has no standing to petition for visitation (*see Matter of Alison D. v Virginia M.,* 77 NY2d 651 [1991]).