■ JOSEPH MOHEN, Appellant, v ANNA MOHEN, Respondent. [862 NYS2d 75]—

In an action for a divorce and ancillary relief, the father appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Nassau County (Stack, J.), dated October 16, 2007, as, after a nonjury trial, awarded the mother custody of the parties' child, with visitation to him, and maintenance in the sum of $3,500 per month for five years.

Ordered that the judgment is modified, on the law and in the exercise of discretion, (1) by deleting the provision thereof awarding the mother custody of the parties' child with visitation to the father, and substituting therefor a provision awarding custody of the parties' child to the father with visitation to the mother, (2) by deleting the provision thereof awarding the mother maintenance in the sum of $3,500 per month for five years, and substituting therefor a provision awarding the mother maintenance in the sum of $3,500 per month for five years or until the death of either party or the mother's remarriage, whichever shall occur sooner, and (3) by adding a provision thereto directing that the child shall not leave the United States without the prior knowledge and permission of both parents; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, to determine the issues of child support payable by the mother to the father and visitation in accordance herewith; and it is further,

Ordered that pending further proceedings in the Supreme Court to determine an appropriate visitation schedule of the child with the mother incident to the change of custody, the visitation schedule set forth in the judgment appealed from pertaining to school vacations, school breaks, weeknights, and state-recognized holidays shall now apply to the mother.

The father's objections to certain of the Supreme Court's rulings are, for the most part, unpreserved for appellate review (see CPLR 4017, 5501 [a]) and, in any event, are without merit, as the proffered evidence was either cumulative or irrelevant (see CPLR 2002; Matter of Kubista v Kubista, 11 AD3d 743 [2004]; Laba v Laba, 281 AD2d 686 [2001]; Stemmer v Stemmer, 182 AD2d 1120 [1992]; Chumsky v Chumsky, 108 AD2d 714 [1985]).

There is "no prima facie right to the custody of the child in either parent" (Domestic Relations Law § 70 [a]; § 240 [1] [a]; see Friederwitzer v Friederwitzer, 55 NY2d 89 [1982]; Matter of Riccio v Riccio, 21 AD3d 1107 [2005]). The essential consideration in making an award of custody is the best interests of the

child (see *Friederwitzer v Friederwitzer*, 55 NY2d 89 [1982]; *Matter of McIver-Heyward v Heyward*, 25 AD3d 556 [2006]). "Factors to be considered include 'the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent' " (*Kaplan v Kaplan*, 21 AD3d 993, 994-995 [2005], quoting *Miller v Pipia*, 297 AD2d 362, 364 [2002]).

The Supreme Court properly identified the factors that were to be considered in rendering its custody determination. It also properly concluded that an award of sole custody to one parent, rather than joint custody to both parents, was in the best interests of the child given the level of acrimony between the parties and their inability to function together in a manner necessary for a joint arrangement (see *Pambianchi v Goldberg*, 35 AD3d 688, 689 [2006]; *Granata v Granata*, 289 AD2d 527, 528 [2001]).

We find on this record, however, that the Supreme Court's award of custody to the mother lacks a sound and substantial basis and, therefore, must be set aside (see *Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Schneider v Schneider*, 40 AD3d 956 [2007]). Although trial courts have the opportunity to assess the parties' credibility with reference to their character, temperament, and sincerity (see *Eschbach v Eschbach*, 56 NY2d at 171; *Schneider v Schneider*, 40 AD3d at 956), in matters of custody, the authority of the Appellate Division is as broad as that of the trial judge (see *Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]).

Here, the Supreme Court gave insufficient attention to facts and evidence that, in our opinion, are of such significant collective magnitude as to warrant a custody determination in favor of the father. First, the Supreme Court found, with support in the record, that the mother, on at least one occasion, had filed false charges of physical abuse against the father. Indeed, the record was clear that the mother made numerous false charges against the father. There were four incidents of physical abuse accusations by the mother against the father, in August 2004, December 2004, January 2005, and December 2005. All of the Family Court petitions, when filed, apparently were withdrawn or dismissed. All of the mother's reports to child protective authorities were investigated and determined to be "unfounded."

Moreover, expert medical testimony in the record strongly suggests that, regarding the January 2005 alleged incident, the mother manufactured proof of physical injury to herself. She admitted to the forensic examiner, and confirmed at trial, that the January 2005 incident of alleged physical abuse "might have been an accident." As a result of the January 2005 accusations, a temporary order of protection was issued against the father that prevented contact between the father and the child for approximately one month.

The mother accused the father of having physically abused the child in December 2005 after a visitation exchange, and made a report to Child Protective Services. Records from Maimonides Hospital, where the child was examined the day after the exchange, found the child to be physically normal.

The mother's manipulative conduct demonstrates a purposeful placement of her self-interest above the interests of others (*see Cucinello v Cucinello*, 234 AD2d 365 [1996]). Indeed, evidence of false allegations of physical abuse which interfere with parental rights, is "so inconsistent with the best interests of the child that it raises, by itself, a strong probability that the offending party is unfit to act as a custodial parent" (*Matter of Gago v Acevedo*, 214 AD2d 565, 566 [1995]; *see also Nir v Nir*, 172 AD2d 651, 652 [1991]). By contrast, there is no evidence that any calls the father made to the police against the mother were baseless, and the Supreme Court made no such finding. The Supreme Court failed to attribute adequate significance to the determination that the mother had made at least one false claim, though the record evidences more than one such claim, and improperly equated that evidence with markedly less egregious conduct of the father.

Second, the trial court erred in finding that the mother, rather than the father, would better foster the child's relationship with the noncustodial parent. While the parenting skills of both the mother and the father are subject to criticism, there is sufficient evidence from which to conclude that the father demonstrated an ability to foster post divorce parent-child relationships, having done so with regard to his two older children from an earlier marriage. Moreover, a conclusion that the mother would more successfully foster a child/noncustodial parent relationship is insupportable, in light of her false allegations of physical abuse against the father.

Third, the child's best interests are fostered by awarding custody to the father. Although overlooked by the Supreme Court, the father works from a home office and would be more readily available than the mother to meet the child's daily and

immediate needs (*cf. Del Papa v Del Papa,* 172 AD2d 798, 799 [1991]).

Fourth, the judicial preference of keeping siblings together, where possible, in order to encourage close familial relationships, is firmly established (*see Eschbach v Eschbach,* 56 NY2d 167, 173 [1982]). While there is clearly an age difference between the parties' child and his two half-siblings, the numerous benefits the child could derive from the development of a relationship with the older siblings should not have been summarily disregarded.

Our custody determination, rather than being based upon the existence or absence of any one factor, is instead based upon our review of the evidence peculiar to this case relating to all of the relevant factors (*id.; see Rupp-Elmasri v Elmasri,* 305 AD2d 393 [2003]; *Miller v Pipia,* 297 AD2d at 364).

Contrary to the father's contention regarding the issue of maintenance, the Supreme Court set forth the factors that it considered in awarding maintenance and the reasons for its decision (*see Hartog v Hartog,* 85 NY2d 36, 50-51 [1995]; Domestic Relations Law § 236 [B] [6] [a]). The court's "failure to analyze each of the statutory maintenance factors [does] not alone warrant appellate alteration of the award" (*Hartog v Hartog,* 85 NY2d at 51; *see Kudela v Kudela,* 277 AD2d 1015, 1016 [2000]). Taking these factors into consideration, the Supreme Court providently exercised its discretion in granting the mother maintenance in the sum of $3,500 per month for five years (*see Meccariello v Meccariello,* 46 AD3d 640 [2007]; *Kaplan v Kaplan,* 21 AD3d 993 [2005]). However, it erred in failing to include a provision that the award of maintenance shall terminate upon the death of either party or the mother's remarriage, whichever shall occur sooner (*see* Domestic Relations Law § 236 [B] [1] [a]; *Haines v Haines,* 44 AD3d 901 [2007]; *Gold v Gold,* 276 AD2d 587 [2000]). Lifson, J.P., Miller, Dillon and Eng, JJ., concur.