■ MARTIN GOLDSTEIN, Appellant, v CYNTHIA MARIE KRASNANSKY GOLDSTEIN, Respondent. [889 NYS2d 661]—

The parties to this action were married in 1998 and had one child, a daughter, born on August 24, 1998. In 1999 the parties separated and executed a written separation agreement, inter alia, giving the defendant mother custody of the child, subject to enumerated visitation rights for the plaintiff father, including overnight visitation with the child. In 2002 the father commenced this action against the mother in the Supreme Court, Queens County, following a long entangled history with respect to issues with visitation, which initially stemmed from the mother's allegations of inappropriate sexual contact between the father and the child. None of the allegations was ever substantiated.

Shortly thereafter, the father moved for the enforcement of the visitation provisions of the separation agreement. In 2003 the Supreme Court (Dorsa, J.) appointed a forensic evaluator, Dr. John McCann, who testified at a hearing conducted to explore the sexual allegations against the father. Dr. McCann opined, among other things, that the sexual contact allegations against the father were unfounded, and that there was interference by the mother with his visitation. By oral modification agreement in open court dated March 22, 2004, the parties settled the pending enforcement dispute by agreeing, inter alia, that the father would have four hours of biweekly supervised visitation until July 2004, when he would have unsupervised visitation with the child every weekend for four hours at public places.

By judgment of divorce dated June 17, 2004, the parties' mar-

riage was dissolved in accordance with their separation agreement (*see* Domestic Relations Law § 170 [6]), which, in conjunction with the modification agreement dated March 22, 2004, was incorporated by reference but not merged into the judgment. Visitation problems nonetheless continued, prompting the father to file several applications against the mother for enforcement of the parties' visitation agreements.

Subsequently, the parties entered into a so-ordered stipulation (Strauss, J.) dated October 13, 2004, which modified the judgment by providing the father with expanded visitation "supervised only by the general public" until November 20, 2004, when he was to have unsupervised visitation with the child each Saturday for six hours, to be expanded upon the earlier of the recommendation of a family therapist or within three months. In accordance therewith, in correspondence dated March 18, 2005, a therapist stated that he found no evidence of inappropriate sexual contact, and recommended that the father be permitted unsupervised, overnight visitation with the child.

In November 2005 the father again moved to enforce the parties' latest visitation agreement, and the mother cross-moved for the appointment of an attorney for the child and an in camera interview by the court. In an order dated February 6, 2006, the Supreme Court (Strauss, J.) denied the father's motion and appointed an attorney for the child. In April 2006 Justice Strauss conducted his first in camera interview with the child. On February 27, 2007 a new court-appointed forensic psychiatrist Dr. William Kaplan again concluded that the mother's sexual allegations were unfounded and "ludicrous," and recommended that the father have "unfettered, normalized" visitation immediately with the child.

In June 2008 the father moved for, inter alia, modification of the parties' stipulation dated October 13, 2004, so as to award him joint custody of the parties' child and joint decision-making authority with respect to the child, or, in the alternative, to award him expanded, overnight visitation with the child. On August 5, 2008 the court conducted its second in camera interview with the child. Without ever conducting a hearing on the parties' controverted allegations and second forensic evaluation, the Supreme Court denied those branches of the father's motion which were for joint custody and joint decision-making authority with respect to the child, or expanded, overnight visitation, but granted him, among other things, access to the child's health, welfare, and education information. We reverse the Supreme Court's order insofar as appealed from.

" 'In order to modify an existing custody [or visitation] ar-

rangement, there must be a showing of a subsequent change of circumstances so that modification is required to protect the best interests of the child' " (*Matter of Gurewich v Gurewich*, 58 AD3d 628, 629 [2009], quoting *Matter of Fallarino v Ayala*, 41 AD3d 714 [2007]; *see Matter of Weinberg v Weinberg*, 52 AD3d 616 [2008]; *Matter of Robertson v Robertson*, 40 AD3d 1219, 1220 [2007]). The best interests of the child are determined by a review of the totality of the circumstances (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Matter of Fallarino v Ayala*, 41 AD3d at 714-715). In this regard, the court should consider whether the alleged changed circumstances indicate one of the parties is unfit, "the nature and quality of the relationships between the child and the parties," and "the existence of a prior agreement" (*Matter of Wilson v McGlinchey*, 2 NY3d 375, 381 [2004]; *see Friederwitzer v Friederwitzer*, 55 NY2d 89, 94-95 [1982]). "[A] change in circumstances may be demonstrated by, *inter alia*, . . . interference with the noncustodial parent's visitation rights and/or telephone access" (*Matter of Le Blanc v Morrison*, 288 AD2d 768, 770 [2001], quoting *Matter of Markey v Bederian*, 274 AD2d 816, 817 [2000]; *see Matter of David WW. v Laureen QQ.*, 42 AD3d 685, 686 [2007]).

In view of the parties' and the child's disputed factual allegations in this case, which directly bear upon the issue of enhanced visitation, the recommendations of three mental health experts that the father be given normalized visitation with the child (*see Matter of Nikolic v Ingrassia*, 47 AD3d 819 [2008]; *Matter of Kozlowski v Mangialino*, 36 AD3d 916 [2007]; *Miller v Pipia*, 297 AD2d 362 [2002]; *Young v Young*, 212 AD2d 114, 118 [1995]), the father's allegations of a change in circumstances based on custodial interference, and the absence of any prior hearing in six years of litigation concerning custody and visitation, the Supreme Court improvidently exercised its discretion in denying those branches of the father's motion which were for joint custody and joint decision-making authority with respect to the child, or, in the alternative, expanded overnight visitation with the child, without a hearing to determine whether the denial was in the best interests of the child (*see Matter of Gurewich v Gurewich*, 58 AD3d at 629; *Matter of Weinberg v Weinberg*, 52 AD3d 616 [2008]; *Matter of Le Blanc v Morrison*, 288 AD2d at 770; *Matter of Markey v Bederian*, 274 AD2d at 817; *Matter of Sandra C. v Christian D.*, 244 AD2d 551 [1997]; *Hizme v Hizme*, 212 AD2d 580, 581 [1995]). Accordingly, the matter must be remitted to the Supreme Court, Queens County, for a hearing, to be held with all convenient speed, on those branches of the father's motion which were to modify the parties' stipulation dated October 13, 2004, so as to award him

joint custody of the child and joint decision-making authority with respect to the child, or, in the alternative, to award him expanded, overnight visitation, with the child, and for a new determination thereafter on those branches of the motion (*see Matter of David WW. v Laureen QQ.*, 42 AD3d at 686).

The father's remaining contentions need not be addressed in light of our determination. Dillon, J.P., Florio, Balkin and Leventhal, JJ., concur.