■ In the Matter of ROBERT MARRERO, Respondent, v ADA CENTENO, Appellant. In the Matter of ADA CENTENO, Appellant, v ROBERT MARRERO, Respondent. [896 NYS2d 157]—

In related proceedings pursuant to Family Court Act article 6, the mother appeals, as limited by her brief, from so much of an order of the Family Court, Rockland County (Christopher, J.), dated March 27, 2009, as, after a hearing, granted the father's petition for sole custody of the parties' child and, in effect, denied that branch of her cross petition which was for sole custody of the parties' child.

Ordered that the order is reversed insofar as appealed from, on the law and in the exercise of discretion, without costs or disbursements, the father's petition for sole custody of the parties' child is denied, that branch of the mother's cross petition which was for sole custody of the parties' child is granted, and the matter is remitted to the Family Court, Rockland County, for further proceedings consistent herewith.

The parties are the parents of the subject child, Summer, who was born in 2001. The parties never married, and ended their

relationship when the child was an infant. Thereafter, the mother and the child resided in the Bronx, and the father resided in Rockland County with his parents. There was no order awarding custody to either parent.

In April 2006 the mother, her boyfriend, and the child moved from New York City to Alta Vega, Puerto Rico. According to the mother, she moved because the cost of living in Puerto Rico was less than in New York City, she could more easily provide for the child financially in Puerto Rico, and she would have more time for the child in Puerto Rico because she could work fewer hours there. The child attended kindergarten and first grade in Puerto Rico. The father was aware of the mother's relocation to Puerto Rico, and the paternal grandfather, who also had a home in Puerto Rico, attended the child's kindergarten graduation. In addition, the child spent the summers of 2006 and 2007 in Rockland County with her paternal grandparents.

In January 2008 the mother and the child returned to New York City because the mother had commenced an action, on behalf of the child, to recover damages for personal injuries allegedly resulting from the child's exposure to lead paint (hereinafter the lawsuit). The mother and the paternal grandparents agreed that the child would reside with the paternal grandparents and attend school in Rockland County while the lawsuit was pending, and that the mother would return to Puerto Rico with the child once the lawsuit was completed. During this time, the mother lived in the Bronx with her sister, and visited with the child on the weekends.

In May 2008, after the lawsuit was settled in the child's favor, the mother announced her intent to return to Puerto Rico with the child and informed the paternal grandparents of her expected departure date. However, on or about June 19, 2008, the father commenced the instant child custody proceeding, alleging, inter alia, that in June 2007, the mother "voluntarily gave [the] child to [the father] to raise." The father thereafter took the child out of school and deprived the mother of access to the child. The mother subsequently filed a cross petition seeking, inter alia, custody of the child. The Family Court appointed an attorney for the child, and a forensic evaluator was appointed to interview the parties, the paternal grandparents, the mother's sister, and the child. The forensic evaluator did not offer an opinion as to which parent should be awarded custody, but submitted a written report to the Family Court. Following a hearing in which the Family Court heard testimony from the parties, the forensic evaluator, and from a member of the Rockland County Probation Department, the Family Court,

among other things, granted the father's petition for sole custody of the child and, in effect, denied that branch of the mother's cross petition which was for sole custody of the child. We reverse the order insofar as appealed from.

As an initial matter, contrary to the mother's contention, the Family Court applied the correct standard to the father's custody petition. Since there was no prior custody order in effect, the father was not required to show a change in circumstances justifying a change in custody (*see Matter of Louis M. v Administration for Children's Servs.*, 69 AD3d 633 [2010]; *Matter of Neail v Deshane*, 19 AD3d 758, 758 n [2005]).

There is "no prima facie right to the custody of the child in either parent" (Domestic Relations Law § 70 [a]; § 240 [1] [a]; *see Friederwitzer v Friederwitzer*, 55 NY2d 89 [1982]; *Matter of Riccio v Riccio*, 21 AD3d 1107 [2005]). The essential consideration in making an award of custody is the best interests of the child (*see Friederwitzer v Friederwitzer*, 55 NY2d at 94; *Matter of McIver-Heyward v Heyward*, 25 AD3d 556 [2006]). "Factors to be considered include the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (*Mohen v Mohen*, 53 AD3d 471, 473 [2008] [citations and internal quotation marks omitted]). This Court's authority in custody determinations is as broad as that of the hearing court (*see Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]), and while we are mindful that the hearing court has an advantage in being able to observe the demeanor and assess the credibility of witnesses, we "would be seriously remiss if, simply in deference to the finding of a Trial Judge," we allowed a custody determination to stand where it lacks a sound and substantial basis in the record (*Matter of Gloria S. v Richard B.*, 80 AD2d 72, 76 [1981]; *see Matter of Larkin v White*, 64 AD3d 707, 708-709 [2009]).

The Family Court's determination to grant the father's petition for sole custody of the child and, in effect, to deny that branch of the mother's cross petition which was for sole custody of the child lacks a sound and substantial basis in the record and, thus, cannot be upheld. The Family Court gave insufficient weight to the fact that the mother has been the child's primary care provider since the child's birth, providing for both the child's emotional and intellectual development (*see Eschbach v*

*Eschbach*, 56 NY2d 167, 172 [1982]; *cf. Matter of Dwyer-Hayde v Forcier*, 67 AD3d 1011, 1012 [2009]; *Kaplan v Kaplan*, 21 AD3d 993, 995 [2005]). The forensic evaluator testified that it was clear that the mother had always provided for the child, and that the child was very healthy. The attorney for the child described the child as smart and stated that this was due primarily to the mother's care. The mother testified that she had a number of jobs in New York City to support the child and that when she moved to Puerto Rico in April 2006, she continued to work to support the child. The evidence adduced at the hearing demonstrates that the child has been in the custody of the mother for most of her life, that the mother is a fit parent, and that the child has thrived in the mother's care (*see Eschbach v Eschbach*, 56 NY2d at 171).

In contrast, there is no evidence in the record that the father sought to have any relationship with the child prior to June 2008. This Court's review of the record supports the conclusion that, although the father resided in his parents' home, it was the paternal grandparents who tended to the child's daily needs during the time that the child resided with them. While the record indicates that the mother was awarded child support, the father admitted at the hearing that he owed the mother approximately $40,000 in child support arrears, which demonstrated his past failure to provide for the child. The father also admitted that he was incarcerated in 2006 for wilfully failing to pay child support.

Furthermore, the Family Court failed to afford sufficient weight to evidence which indicated that the father, who had an admitted history of drug abuse, repeatedly avoided drug testing during the pendency of the custody matter (*see Matter of LaFountain v Gabay*, 69 AD3d 994 [2010]; *Matter of VanDee v Bean*, 66 AD3d 1253 [2009]; *cf. Matter of Larkin v White*, 64 AD3d 707 [2009]). The record is replete with evidence that the father engaged in a pattern of behavior with the intent to frustrate court-ordered urine drug tests and hair follicle tests. Indeed, during the hearing, by order dated February 27, 2009, the Family Court adjudicated the father in contempt for wilfully violating a prior order of the same court directing him, inter alia, to comply with forensic hair analysis for the purpose of determining whether he was abusing drugs. In addition, the evidence adduced at the hearing established that the mother, not the father, would better foster the relationship with the other parent because the mother has done so in the past. Under the circumstances, the Family Court placed undue weight on the child's desire to remain in New York City. We note that, at

the time of the hearing, the child was seven years old. "While not determinative, the child's expressed preference is some indication of what is in the child's best interests. Of course, in weighing this factor, the court must consider the age and maturity of the child and the potential for influence having been exerted on the child" (*Eschbach v Eschbach*, 56 NY2d at 173). The forensic evaluator testified that while the child expressed a desire to remain in New York, the evaluator believed that the child's desire was premised upon the mother remaining in New York, as the child's experience was that the mother had always been in New York.

Under the unique circumstances of this case, and upon consideration of the relevant factors, we find that it is in the child's best interest to be in the custody of her mother, rather than in the custody of her father. Since the child currently resides in New York, and the mother in Puerto Rico, the transfer of physical custody shall not take place until the child completes the current school year in New York, or the mother moves back to New York on the condition that the child completes the current school year.

In light of our award of custody to the mother, the parties should share visitation with the child during the summer of 2010. Thereafter, the father should be awarded visitation with the child for most of the Christmas vacation, liberal visitation during other holidays, and additional visitation as can be agreed upon by the parties or set by the court. Accordingly, we remit the matter to the Family Court, Rockland County, for further proceedings, including the issuance of a permanent visitation order, and an order which sets the date that the transfer of physical custody shall occur. Fisher, J.P., Angiolillo, Leventhal and Lott, JJ., concur.