In the Matter of SONIA M. MORAN, Appellant, v RAFAEL CORTEZ, Respondent. (Proceeding No. 1.) In the Matter of RAFAEL CORTEZ, Respondent, v SONIA M. MORAN, Appellant. (Proceeding No. 2.) [925 NYS2d 539]—

In related child custody and visitation proceedings pursuant to Family Court Act article 6, the mother appeals from an order of the Family Court, Queens County (Negron, Ct. Atty. Ref.),

dated June 17, 2010, which, after a hearing, in effect, granted the father's cross petition for custody of the subject child and denied her petition for custody. By decision and order on motion of this Court dated July 22, 2010, enforcement of the order appealed from was stayed pending hearing and determination of the appeal.

Ordered that the order is reversed, on the facts and in the exercise of discretion, without costs or disbursements, the mother's petition for custody of the child is granted, the father's cross petition is denied, and the matter is remitted to the Family Court, Queens County, for further proceedings consistent herewith.

The parties are the parents of a child who was born on October 1, 2001. The parties resided together in an apartment in Flushing, Queens, until the mother and child moved into an apartment in Flushing with the mother's sister, brother-in-law, and niece, and the father moved into his own apartment in Corona, Queens. On August 6, 2006, the mother filed a petition for custody of the child. On August 9, 2007, the father filed a cross petition for custody. By agreement, the father and child have enjoyed regular weekend visits during the pendency of these proceedings. After a custody hearing, which included the testimony of the parents, the father's employer, and a court-appointed forensic evaluator, and after an in camera interview with the child, the Family Court awarded custody to the father. We reverse.

There is "no prima facie right to the custody of the child in either parent" (Domestic Relations Law § 70 [a]; § 240 [1] [a]; see Friederwitzer v Friederwitzer, 55 NY2d 89 [1982]; Matter of Riccio v Riccio, 21 AD3d 1107 [2005]). The essential consideration in making an award of custody is the best interests of the child (see Friederwitzer v Friederwitzer, 55 NY2d at 94; Matter of McIver-Heyward v Heyward, 25 AD3d 556 [2006]). "Factors to be considered include the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (Mohen v Mohen, 53 AD3d 471, 473 [2008] [internal quotation marks omitted]). This Court's authority in custody determinations is as broad as that of the hearing court (see Matter of Louise E.S. v W. Stephen S., 64 NY2d 946, 947 [1985]), and while we are mindful that the hearing court

has an advantage in being able to observe the demeanor and assess the credibility of witnesses, we "would be seriously remiss if, simply in deference to the finding of a Trial Judge," we allowed a custody determination to stand where it lacks a sound and substantial basis in the record (*Matter of Gloria S. v Richard B.*, 80 AD2d 72, 76 [1981]; *see Matter of Marrero v Centeno*, 71 AD3d 771 [2010]; *Matter of Larkin v White*, 64 AD3d 707, 708-709 [2009]).

In awarding the father custody, the Family Court failed to afford sufficient weight to the child's need for stability, and the impact of uprooting her from her current home and transferring her to a different school (*see Matter of Bennett v Jeffreys*, 40 NY2d 543, 550 [1976]; *see also Matter of Larkin v White*, 64 AD3d at 709; *Matter of Moorehead v Moorehead*, 197 AD2d 517, 519 [1993]; *Meirowitz v Meirowitz*, 96 AD2d 1030 [1983]). The father testified that if he were awarded custody he would transfer the child from her current school in Queens, which was located within walking distance from where the mother resided, to a school in Manhattan near his place of employment. The father's proposed weekday routine would entail waking the child earlier in the morning, traveling 45 minutes on public transportation from Queens to Manhattan, caring for the child in the father's office for two hours each day after school, and returning home at 6:00 or 7:00 P.M. This schedule, the forensic evaluator agreed, would be "long" and "grueling" for the child.

The record indicates that both parents were caring and affectionate and that neither party was more fit to parent than the other. There was no showing that either party could not financially provide for the child. However, there is evidence in the record that the mother would provide more direct care to the child due to her work schedule. Furthermore, the evidence adduced at the hearing established that the mother was capable of continuing to foster the child's relationship with her father, as she has done in the past, to the benefit of the child's emotional and intellectual development. Under the circumstances, the interests of the child would best be served by preserving the status quo, and leaving the child in the custody of her mother where, by all accounts, she is thriving (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Matter of Peroglu v Baez*, 54 AD3d 416, 418 [2008]).

We deem it appropriate that the father's liberal visitation continue. Accordingly, we remit the matter to the Family Court, Queens County, for further proceedings, including the issuance of a permanent visitation order. Covello, J.P., Leventhal, Lott and Miller, JJ., concur.