■ In the Matter of JAMES A.-S., Appellant, v CASSANDRA A.-S., Respondent. [967 NYS2d 99]—

In related family offense proceedings pursuant to Family Court Act article 8 and custody and visitation proceedings pursuant to Family Court Act article 6, the father appeals (1) from an order of the Family Court, Westchester County (Greenwald, J.), dated December 23, 2011, which, after a hearing, inter alia, denied his family offense petitions, and (2) from so much of an order of the same court, also dated December 23, 2011, as, after a hearing, denied his petition for sole physical custody of the parties' children and granted the mother's cross petition for sole physical custody of the parties' children.

Ordered that the first order dated December 23, 2011, is affirmed, without costs or disbursements; and it is further,

Ordered that the second order dated December 23, 2011, is reversed insofar as appealed from, on the facts and in the exercise of discretion, without costs or disbursements, the mother's cross petition for sole physical custody of the subject children is denied, the father's petition for sole physical custody of the subject children is granted, and the matter is remitted to the Family Court, Westchester County, for further proceedings consistent herewith, to establish an appropriate visitation schedule for the mother and, thereafter, to issue a permanent visitation order; and it is further,

Ordered that, pending further order of the Family Court, Westchester County, the mother shall have unsupervised visitation with the children the first three weekends of every month from Friday at 6:00 p.m. through Saturday at 7:00 p.m. and shall have the right to exercise mid-week dinner visits every Wednesday from after school or day care until 7:00 p.m., or other times as the parties may agree, provided that the children shall never be left alone with Thomas Sherlock; and it is further,

Ordered that the father shall provide the mother with all information pertaining to the children's health, education, welfare, and extracurricular activities, and shall provide the respective schools, doctors, and activity coordinators with appropriate documentation authorizing the release of that information to the mother.

The parties were married in October 2005 and have two young daughters. After the parties separated, the mother left the parties' children in the father's care, and began residing with a man named Thomas Sherlock. The father subsequently petitioned for sole legal custody of the children and separately filed family offense petitions against the mother. The father contended, among other things, that the mother was in a relationship with Thomas Sherlock and that Sherlock posed a threat to the safety and well-being of the subject children. Specifically, the father asserted that Sherlock, who is 19 years older than the mother, had engaged in an inappropriate relationship with the mother beginning after Sherlock first contacted her in an internet chatroom when the mother was only 12 years old. The father further asserted that Sherlock was the subject of a founded report in connection with allegations that he engaged in sexually abusive acts with his former stepdaughter when she was 14 years old. The father testified that, given the mother's relationship with Sherlock (they were engaged to be married at the time of the hearing), the children were consistently exposed to him and routinely left alone in his care.

The mother cross-petitioned for sole physical custody of the subject children, and a hearing was held. The mother acknowledged that she first came into contact with Sherlock in an internet chatroom when she was 12 years old in the 1990s, and that the two met in person at a doughnut shop when she was approximately 16 years old. The mother testified that she and Sherlock stayed in contact and continued to maintain a relationship until the present day.

Sherlock also testified at the hearing, and although he acknowledged forming a relationship with the mother when she was 12 years old, he asserted that it did not become sexual until after she turned 18 years old. Sherlock also denied sexually abusing his former stepdaughter. Sherlock additionally claimed that he was never left alone with the subject children and that he only occasionally would help to feed them.

However, a forensic mental health evaluation prepared by a psychologist affiliated with Westchester Jewish Community Services substantiated the father's claim that a founded report had been filed against Sherlock, in which Sherlock was alleged to have engaged in inappropriate sexual acts with his then 14-year-old stepdaughter. Furthermore, the evaluation revealed that both the mother and Sherlock exhibited a "dismissive attitude" with regard to Sherlock's inappropriate relationship with the mother when she was 12 years old and to the founded report of Sherlock's inappropriate sexual behavior with his then 14-year-old stepdaughter. The evaluation concluded that "the presence of Mr. Sherlock in [the mother's] home . . . renders [the mother] not suitable for physical residence."

After the hearing, the Family Court denied the father's family offense petitions, denied his petition for sole physical custody of the subject children, and granted the mother's cross petition for sole physical custody. With respect to the issue of custody, the court determined that the mother was "marginally the better suited parent." The court nevertheless noted that there was "cause for concern regarding Mr. Sherlock and his interaction with the subject children." The court concluded that "[b]ased on the founded report of abuse against Mr. Sherlock [and] his questionable judgment in, at one point, maintaining a seemingly inappropriate relationship with a minor . . . this Court finds that it is in the best interests of the children that Mr. Sherlock remain away from the subject children *at all times*" (emphasis added). Accordingly, the Family Court directed that the mother "shall not permit the Subject Children to be in the presence of Mr. Thomas Sherlock unless the subject children are supervised at all times by the Respondent or any other adult approved by the Respondent/Mother." The father appeals.

Since the father failed to establish, by a fair preponderance of the evidence, the allegations contained in his family offense petitions, the Family Court properly denied the father's family offense petitions (*see* Family Ct Act § 812 [1]; *see also Matter of Cooper v Robertson*, 97 AD3d 743, 744 [2012]; *Matter of Foxworth v DeJesus*, 74 AD3d 1064, 1064 [2010]). However, under the circumstances of this case, the Family Court should have granted the father's petition for custody and denied the mother's cross petition.

The essential consideration in any custody dispute is the best interests of the children (*see Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]). In determining the best interests of the children, the court must evaluate the totality of the circumstances (*see id.* at 171; *Nicholas T. v Christine T.*, 42 AD3d 526, 527 [2007]; *Matter of Berrouet v Greaves*, 35 AD3d 460, 461 [2006]). This Court's authority in custody determinations is as broad as that of the hearing court (*see Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]), and while we are mindful that the hearing court has an advantage in being able to observe the demeanor and assess the credibility of witnesses, we "would be seriously remiss if, simply in deference to the finding of a Trial Judge," we allowed a custody determination to stand where it lacks a sound and substantial basis in the record (*Matter of Gloria S. v Richard B.*, 80 AD2d 72, 76 [1981]; *see Matter of Moran v Cortez*, 85 AD3d 795, 796 [2011]; *Matter of Marrero v Centeno*, 71 AD3d 771 [2010]; *Matter of Larkin v White*, 64 AD3d 707, 708-709 [2009]).

Here, the Family Court's award of sole physical custody to the mother lacked a sound and substantial basis in the record. In awarding the mother custody, the Family Court gave undue weight to its finding that the mother would be more likely than the father to foster a meaningful relationship between the subject children and the noncustodial parent. Furthermore, the Family Court failed to give sufficient weight to the forensic mental health evaluation, which indicated that the mother was not suitable for physical custody of the children and to its own finding that it was in the children's best interests for them to remain away from Sherlock at all times (*cf. Matter of Summer A.*, 49 AD3d 722, 726-727 [2008]). Under the totality of the circumstances, including the founded concerns with respect to Sherlock and the attendant risk his relationship with the mother posed to the safety and well-being of the subject children, the best interests of the children would be served by awarding the father sole physical custody (*see Eschbach v Eschbach*, 56 NY2d at 171).

Accordingly, we reverse the second order dated December 23, 2011, insofar as appealed from, grant the father's petition for sole physical custody of the subject children, deny the mother's cross petition for sole physical custody of the subject children, and award sole physical custody of the children to the father. Since we deem it appropriate that the mother enjoy liberal visitation, we remit the matter to the Family Court, Westchester County, for further proceedings to establish an appropriate visitation schedule for the mother and, thereafter, to issue a permanent visitation order. In the interim, we deem it appropriate that, pending further order of the Family Court, the mother shall have unsupervised visitation with the children the first three weekends of every month from Friday at 6:00 p.m. through Saturday at 7:00 p.m. and shall have the right to exercise mid-week dinner visits every Wednesday from after school or day care until 7:00 p.m., or other times as the parties may agree, provided that the children shall never be left alone with Sherlock. Eng, P.J., Balkin, Roman and Miller, JJ., concur.