■ In the Matter of KIRIN DOYLE, Appellant, v ROBIN DEBE, Respondent. (Proceeding No. 1.) In the Matter of ROBIN DEBE, Respondent, v KIRIN DOYLE, Appellant. (Proceeding No. 2.) [991 NYS2d 135]—

In related child custody proceedings pursuant to Family Court Act article 6, the mother appeals, as limited by her brief, from so much of an order of the Family Court, Queens County (Salinitro, J.), dated December 21, 2012, as, after a hearing, denied her petitions for sole physical custody of the subject

child and for permission to relocate to Georgia with the child, and granted the father's petition for sole physical custody of the child.

Ordered that the order is reversed insofar as appealed from, on the facts and in the exercise of discretion, without costs or disbursements, the mother's petitions for sole physical custody of the subject child and for permission to relocate to Georgia with the child are granted, the father's petition for sole physical custody of the child is denied, and the matter is remitted to the Family Court, Queens County, for a hearing to establish an appropriate post-relocation visitation schedule for the father.

The parties met online while the mother was living in California and the father was living in New York. They married in 2002, and the mother relocated to New York. After the parties had a child in March 2006, their relationship deteriorated, and, in 2007, the mother returned to California with the child. The mother and the father eventually reconciled, and the mother and the child returned to New York. The parties separated again in May 2008.

After the second separation, the child initially lived with the mother, but, in August 2008, the child began living with the father. The mother has maintained that the father was supposed to have the child for a four-day visit but refused to return her. The father contends that the mother abandoned the child.

On or about September 12, 2008, the mother filed a petition for sole physical custody of the child. In her petition, the mother alleged that she had a letter from the father in which he stated that the mother could have sole custody of the child. Thereafter, on or about September 16, 2008, the father filed his own petition for sole physical custody of the child.

In April 2010, while the petitions were pending, the mother moved to Georgia and began living with her then-fiancé, whom she later married. In October 2010, the mother filed a petition for permission to relocate to Georgia with the child, alleging that she had moved due to the long history of domestic violence between the parties. She also alleged that, in Georgia, she would be able to provide housing and amenities for the child which were superior to those which she or the father could provide in New York.

In December 2012, the Family Court held a fact-finding hearing on the petitions. The mother testified that, when the parties separated in 2008, the father signed an "agreement," which was admitted into evidence. The document, entitled "Separation Agreement," provided that the mother would have sole physical custody of the child, that the father would pay child

support in a certain amount, and that the father acknowledged that the mother would be relocating with the child. The document, signed by the parties, stated that the father "D[id] Not Want Custody of [the child]," and that the mother agreed to forego maintenance from him.

The mother testified that the parties' divorce was finalized on July 26, 2010. She explained that, on the day they were in court with respect to their matrimonial action, the father approached her to resolve the outstanding custody issues. The parties entered into a "Custody Agreement," which was also admitted into evidence at the fact-finding hearing. That agreement, which was signed by the parties and notarized, provided, inter alia, that the child would "be in her mother's care during Georgia school year. [The child] will have visits with her father . . . during summer [break] and spring [b]reak and every other Christmas."

The mother testified that she filed her custody petition in September 2008 when the father refused to return the child after a visit, despite the parties' prior informal custody arrangement set forth in the "Separation Agreement." The mother explained that she attempted to have the police intervene, but that the father told them that the mother was trying to kidnap the child and the police instructed the mother to go to Family Court to find out if a custody proceeding had been commenced. She stated that the father had kept the child ever since that time.

The mother testified that, since moving to Georgia, she saw the child frequently, including during the summer and over the spring and Christmas breaks. She explained that she had been renting a three-bedroom house in Georgia with her husband, who had family in Georgia, for over two years, and that the child had her own room there. The mother had found a school and chosen a doctor in the area for the child.

The mother also testified that if she were awarded custody, she would allow the father to have visitation with the child every holiday, birthday, spring and Christmas break, and summer recess.

The father testified that, at one point, the mother and the child were living with his sister while he was living at the apartment of his mother (hereinafter the grandmother). He recalled that his sister advised him that the mother had left and the sister did not know where the mother had gone, so he took the child back to the grandmother's apartment to live. Thereafter, the father commenced his custody proceeding.

The father testified that the child had friends from school,

daycare, and Sunday school. During the father's testimony, the child's report cards indicating that she was performing well at school were admitted into evidence.

The father denied that he signed the "Separation Agreement" but acknowledged executing the "Custody Agreement." He testified that, since the time he signed the "Custody Agreement," circumstances had changed because the mother had no family in Georgia and it was not a safe environment. He also stated that he was unaware that the mother's husband had family in Georgia until she testified to that effect, and that he had no proof of this fact. The father testified that if he were awarded custody, he would continue to allow the child to see the mother if the mother stopped smoking.

The father also presented the testimony of the grandmother and his brother. The grandmother acknowledged that she shares a bedroom with the child in the one-bedroom apartment where they reside and that her three adult sons, including the father, also live there.

The court-appointed forensic evaluator testified about her observations of the mother and father with the child, her interviews with both parties, and her opinions of their parenting skills. In the expert's opinion, the mother was the more appropriate custodial parent. The expert opined that it would be in the child's best interests to live with the mother, as she would provide a more stable environment for the child.

The Family Court denied the mother's custody and relocation petitions and granted the father's custody petition on the grounds that, although both parents were fit, the child should not be uprooted from the home she has known since 2008. The mother appeals from so much of the order as denied her petitions and granted the father's petition. We reverse the order insofar as appealed from.

In deciding custody issues, the most important factor to be considered by the court is the best interests of the child (see *Eschbach v Eschbach*, 56 NY2d 167, 171 [1982]; *Matter of Felty v Felty*, 108 AD3d 705, 706 [2013]). This requires the court to evaluate the totality of the circumstances (see *Eschbach v Eschbach*, 56 NY2d at 171; *Matter of Brown v Brown*, 97 AD3d 568, 570 [2012]). In making such a determination, the court is to consider various factors, including "the quality of the home environment and the parental guidance the custodial parent provides for the child, the ability of each parent to provide for the child's emotional and intellectual development, the financial status and ability of each parent to provide for the child, the relative fitness of the respective parents, and the effect an award

of custody to one parent might have on the child's relationship with the other parent" (*Kaplan v Kaplan*, 21 AD3d 993, 994 [2005] [internal quotation marks omitted]; *see Eschbach v Eschbach*, 56 NY2d at 171-172).

Further, a parent seeking to relocate bears the burden of establishing by a preponderance of the evidence that the proposed move is in the child's best interests (*see Matter of Caruso v Cruz*, 114 AD3d 769, 771 [2014]). In considering such a request, the court is to look at "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (*Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]).

"In custody matters, the credibility determinations of the Family Court are entitled to deference, as the Family Court was in the best position to evaluate the credibility of witnesses" (*Matter of Cortez v Cortez*, 111 AD3d 717, 717 [2013]). However, this Court's authority is as broad as that of the hearing court and a custody determination which lacks a sound and substantial basis in the record will not be allowed to stand (*see Matter of Cortez v Cortez*, 111 AD3d 717 [2013]; *Matter of James A.-S. v Cassandra A.-S.*, 107 AD3d 703, 706 [2013]). Similarly, in relocation proceedings, this Court's authority is as broad as that of the hearing court and the hearing court's determination with respect to relocation also will not stand if it is not supported by a sound and substantial basis in the record (*see Matter of Caruso v Cruz*, 114 AD3d at 771-772).

Here, we find that the Family Court's determination as to custody and relocation were not supported by a sound and substantial basis in the record. The court did not give appropriate weight to the credible evidence before it, including the testimony of the parties and witnesses, one of whom was a forensic evaluator. In determining that the child should remain with the father, the court found that, while both parents were fit, the home atmosphere provided by the father was warm and congenial, with relatives residing within the home and nearby. While the father has relatives living in the area, the living conditions provided by the father raise a significant concern since the child shares a bedroom with the grandmother in a one-bedroom apartment and lives with her father and two adult uncles. This

situation is far from being in the child's best interests, especially as she grows older, in view of the fact that the child has her own bedroom in her mother's three-bedroom house which the child shares only with her mother and her mother's husband.

In addition, although this Court recognizes that the child has been residing with the father since 2008, the mother immediately filed a petition for sole physical custody in 2008. Thus, the fact that the child has been residing with the father and not the mother since that time is not a factor which weighs in favor of awarding custody to the father since the amount of time that elapsed between the filing of the mother's petition and the Family Court's determination on the petitions should not be weighed against the mother. The mother, who did not have custody during that time period, visited with the child in New York, and the child spent the summer of 2012 in Georgia with the mother. The mother also mailed the child packages of clothing, school supplies, and toys.

Furthermore, while the recommendation of a court-appointed evaluator is not determinative, it is a factor to be considered and is entitled to some weight (*see Matter of Shannon J. v Aaron P.,* 111 AD3d 829 [2013]). Thus, the Family Court should have given more than minimal weight to the report and testimony of the forensic evaluator who interviewed the parties and the child, and conducted psychological testing. The forensic evaluator found that the child was at ease with her mother despite their separation, and concluded that the mother was the more appropriate custodial parent because she was in a stable relationship, employed, had gone to great lengths to regain custody, and would provide a stable home for the child. Significantly, the psychologist expressed detailed concerns about the father's psychological state, and the impact of his psychological state upon his parenting abilities, and noted that he minimized past incidents of domestic violence between the parties. Further, in the forensic report, which was admitted in evidence, there were statements that, at the last minute, the father would cancel activities that the mother had planned in advance for the child. This evidence calls into question the father's ability to continue to foster the child's relationship with the mother (*see Matter of Griffin v Moore-James,* 104 AD3d 685, 686 [2013]; *Matter of Vasquez v Ortiz,* 77 AD3d 962, 962 [2010]).

Moreover, the parties entered into a "Custody Agreement" whereby they agreed, inter alia, that the child would live in Georgia during the school year. The father acknowledged that he executed this agreement. It does not appear that the Family

Court gave any consideration to this agreement. In addition, the father's testimony as to why he did not abide by the agreement further concerns this Court as to the father's ability to assure that there will continue to be meaningful contact between the mother and the child.

Finally, the mother established by a preponderance of the evidence that moving to Georgia was in the child's best interests. In addition to being able to provide superior living conditions, the mother has already chosen a school and a medical care provider for the child, and she testified that she would promote liberal visitation with the father over almost all of the school breaks.

Accordingly, in examining the totality of the circumstances, the Family Court should have granted the mother's petitions for sole physical custody of the child and for permission to relocate to Georgia with the child, and should have denied the father's petition for sole physical custody of the child. Dickerson, J.P., Chambers, Austin and Sgroi, JJ., concur.