Matter of Newton v McFarlane (2019 NY Slip Op 04386)





Matter of Newton v McFarlane


2019 NY Slip Op 04386


Decided on June 5, 2019


Appellate Division, Second Department


Scheinkman, P.J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 5, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
RUTH C. BALKIN
SYLVIA O. HINDS-RADIX
LINDA CHRISTOPHER, JJ.


2017-13478
 (Docket Nos. V-20779-10/16I, V-33124-10/16I)

[*1]In the Matter of Kwana Newton, petitioner-respondent,
v
Christopher McFarlane, respondent; Kaishawna M. (Anonymous), nonparty-appellant.



APPEAL by the child, in a proceeding pursuant to Family Court Act article 6, from an order of the Family Court (Sharon A. Bourne-Clarke, J.), dated December 21, 2017, and entered in Kings County, which, after a hearing, granted the mother's petition to modify a prior order of custody of the same court (William Franc Perry, J.) dated November 14, 2013, so as to award her sole legal and physical custody of the child.



Karen P. Simmons, Brooklyn, NY (Laura Solecki and Janet Neustaetter of counsel), attorney for the child, the nonparty-appellant.
Austin I. Idehen, Jamaica, NY, for petitioner-respondent.
Golding & Associates, PLLC, New York, NY (Momodou Marong of counsel), for respondent.



SCHEINKMAN, P.J.


OPINION & ORDER
This appeal raises several important issues pertinent to child custody determinations. We conclude that: (a) the attorney for the child has the authority to pursue an appeal on behalf of the child from an order determining the custody of the child; (b) the child is aggrieved, for appellate purposes, by an order determining custody; (c) the Family Court should not have held a full custody hearing without first determining whether the mother had alleged and established a sufficient change in circumstances to warrant an inquiry into whether the child's best interests were served by the existing custodial arrangement; and (d) the Family Court erred in failing to give due consideration to the expressed preferences of the child, who is a teenager.
For the reasons set forth below, the order appealed from should be reversed, and the mother's petition to modify a prior order of custody so as to award her sole legal and physical custody of the child should be dismissed.
Relevant Factual and Procedural Background
In 2013, the Family Court awarded the father sole legal and physical custody of the parties' child, a female who was born in January 2002 and is currently 17 years old. This Court affirmed (see Matter of McFarlane v Newton, 127 AD3d 1199, 1199-1200). In February 2016, after commencing two prior unsuccessful custody modification proceedings, the mother commenced this third modification proceeding seeking sole legal and physical custody of the child. The Family Court, over the objection of the attorney for the child, proceeded to hold a full custody hearing without first addressing whether the mother had alleged a sufficient change in circumstances to warrant an inquiry into whether the child's best interests were served by the existing custodial [*2]arrangement. The court also held in camera interviews with the child on October 25, 2016, and October 6, 2017.
After the hearing, the Family Court stated its conclusion that the mother had established the existence of sufficiently changed circumstances and that awarding sole custody to the mother was in the child's best interests; however, the court wholly failed to explain the bases for these conclusions in its order. The order merely stated:
"The Court finds that the mother has demonstrated sufficient change in circumstance to warrant a best interests review by the court. Upon review of all the testimony heard and evidence received, the Court finds that it is in the best interest of the child to reside with the petitioner mother. As such the petition for modification is granted."
While the court added that a "[f]ull decision [is] to follow," no such subsequent decision was ever issued.
The child, by her court-appointed attorney, appeals, contending that the Family Court's determinations that there was a change in circumstances and that awarding custody to the mother was in the child's best interests lacked a sound and substantial basis in the record. While the father has not filed his own notice of appeal, the father, in his brief to this Court, supports the position taken by the attorney for the child. The mother, in opposing the appeal, contends that the attorney for the child lacks "standing" to appeal on the child's behalf and that the child is not aggrieved by the order changing custody.
On the motion of the attorney for the child, this Court stayed enforcement of the order appealed from pending determination of this appeal.
The Attorney for the Child Has Authority to Pursue the Appeal
We first address the mother's contention that the attorney for the child lacks "standing" to appeal on behalf of the child from the custody determination. Although the mother characterizes her argument as one challenging the standing of the attorney for the child to take the appeal, in actuality, she is arguing that the attorney for the child lacks authority to take this appeal on behalf of the child. This Court has, in the past, consistently entertained appeals in custody cases taken solely by the child, through the attorney appointed to represent that child (see e.g. Matter of Noel v Melle, 151 AD3d 1065; Matter of Rodriguez-Donaghy v Donaghy, 138 AD3d 1123; Matter of Feldman v Feldman, 79 AD3d 871), albeit without discussing the authority of the attorney for the child to take an appeal on the child's behalf.
Children who are the subject of custody proceedings often require the assistance of counsel to help protect their interests, to help them articulate their perspectives, positions, and wishes to the court, and to assist them with advice and information during the pendency of the proceedings (see Family Ct Act § 241; see also NYSBA Committee on Children and the Law, Standards for Attorneys Representing Children in Custody, Visitation and Guardianship Proceedings, Jan. 2015, available at https://www.nysba.org/WorkArea/DownloadAsset.aspx?id=55895 [last accessed May 15, 2019]). When an attorney is appointed by the court to represent a child in a contested custody proceeding,[FN1] that attorney must be afforded the same opportunity as the attorneys for the parents and other contestants to fully participate in the proceeding (see Matter of White v White, 267 AD2d 888, 890). An attorney appointed to represent a child in a custody proceeding has the duty and the obligation to zealously represent the child (see Matter of Donna Marie C. v Kuni C., 134 AD3d 430). In order to fulfill that weighty responsibility, the appointed attorney for the child has the right, equal to the right of the attorneys for the litigants, to fully appear and participate in the litigation, including the right to call, examine, and cross-examine witnesses, and the right to advance arguments on behalf of the child (see Matter of Krieger v Krieger, 65 AD3d 1350). These rights do not evaporate upon the conclusion of the case in the hearing court; rather, these rights may be protected and enforced by the taking of an appeal on behalf of the child (see Matter of Michael S. v Sultana R., 163 AD3d 464, 473).
The right of an attorney appointed to represent a child to take an appeal on behalf of the child is confirmed by section 1120(b) of the Family Court Act. That statute provides that [*3]whenever an attorney has been appointed by the Family Court to represent a child, the appointment continues without the necessity of a further court order where the attorney files a notice of appeal on behalf of the child or where one of the parties files a notice of appeal. The statute thus recognizes that an attorney appointed by the Family Court to represent a child has the right to pursue an appeal on behalf of the child.
Matter of McDermott v Bale (94 AD3d 1542), relied upon by the mother, supports our conclusion that the attorney for the child has authority to appeal on the child's behalf. In McDermott, the attorney for the child refused to join in a settlement stipulation agreed to by the parents. The Family Court approved the stipulation over the attorney for the child's objection, and the attorney, on behalf of the child, took an appeal from the resulting order. While the Appellate Division, Fourth Department, ruled that the attorney for the child could not unilaterally scuttle a proposed settlement by withholding consent, the Court entertained the appeal that was taken by the attorney on the child's behalf, and considered the arguments advanced by that attorney in opposition to the settlement.
We recognize that in Matter of Lawrence v Lawrence (151 AD3d 1879) and Matter of Kessler v Fancher (112 AD3d 1323), the Appellate Division, Fourth Department, dismissed appeals taken by the attorney for the child from orders dismissing custody modification petitions. In those cases, the parent whose petition was dismissed did not appeal. The Court reasoned that children could not compel their parents to litigate positions that the parents had elected to abandon. While we do not necessarily agree with the stated rationale, we do agree that it may be inappropriate to entertain litigation by a child for a change in custody where the parent to whom the custody of the child would be transferred is unwilling to accept the transfer. Likewise, it may be inappropriate to entertain litigation by a child to prevent a change in custody where the parent who has had custody is no longer opposed to the change. The present case does not present such a concern since the father, while not having filed and perfected his own appeal, has submitted a brief in which he urges reversal of the order from which the child has appealed. Further, since enforcement of the order has been stayed pending determination of this appeal, the father remains the custodial parent. Hence, this is not a circumstance where the child is attempting to compel a custody award in favor of an unwilling parent.
We thus conclude that the attorney for the child has authority to take an appeal on behalf of the child from the custody determination made by the Family Court.
The Child Is Aggrieved by the Order Appealed From
The mother contends that the child is not aggrieved by the order changing custody and that, therefore, the child's appeal should be dismissed. We do not agree.
Aggrievement is an appellate concept which is designed to screen out appeals taken by those who have only a mere academic interest, or no interest at all, in the outcome (see Siegel & Connors, NY Prac § 525 [6th ed 2018]; CPLR 5511 [only an aggrieved party may appeal an otherwise appealable paper]). "[A] person is aggrieved when someone asks for relief against him or her, which the person opposes, and the relief is granted in whole or in part" (Mixon v TBV, Inc., 76 AD3d 144, 156-157 [emphasis omitted]; accord Burro v Kang, 167 AD3d 694, 697; Finkelstein v Lincoln Natl. Corp., 107 AD3d 759, 759). Here, during the hearing, the attorney for the child opposed the mother's petition for sole custody and advocated for the father's continued custody, which position was based in large part on the child's clearly expressed preference to remain living with the father. In a technical sense, having sought and been denied different relief by the Family Court and having opposed the relief that was granted to the mother, the child should be considered aggrieved by the determination by the Family Court (see e.g. Matter of Alexander Z. [Anne Z.], 151 AD3d 421, 421 [stating that "the children may have been aggrieved by the order of disposition, which placed the children into their father's custody with supervision by petitioner agency for 12 months"]; Matter of Angel D. v Nieza S., 131 AD3d 874, 875 [noting that "[t]o the extent the appellant child is aggrieved by the [custody] order, we find that the court's determination . . . has a sound and substantial basis in the record" (citations omitted)]; Matter of Baxter v Bordon, 122 AD3d 1417, 1418 [assuming, arguendo, that "the [subject] children are aggrieved by the [custody] issue raised on appeal by the Attorney for the Children"]; see also Matter of Denise V.E.J. [Latonia J.], 163 AD3d 667, 669 [noting that the subject child was aggrieved by an order denying the child's motion to participate in person at a permanency hearing]).
Substantively, and more importantly, it cannot be denied that a teenaged child has a real and substantial interest in the outcome of litigation between the parents as to where the child [*4]should live and who should be entrusted to make decisions for the child. It seems self-evident that the child is the person most affected by a judicial determination on the fundamental issues of responsibility for, and the environment of, the child's upbringing. To rule otherwise would virtually relegate the child to the status of property, without rights separate and apart from those of the child's parents. As Chief Judge Charles D. Breitel stated in the landmark case of Matter of Bennett v Jeffreys (40 NY2d 543, 546): "a child is a person, and not a subperson over whom the parent has an absolute possessory interest. A child has rights too, some of which are of . . . constitutional magnitude." Among those rights is the child's right to have his or her best interests, and his or her position concerning those interests, given consideration by the court.
The suggestion that a child cannot be aggrieved by a decision to award sole custody to one of the parents against the child's wishes is also contrary to the policy reasons underlying the assignment of an attorney for the child. The assigned attorney is tasked with advocating for the child's wishes and best interests, precisely because the child has a real and vital interest in the outcome and a voice that should be heard. To that end, the Family Court Act makes clear that attorneys for children "often [are] indispensable to a practical realization of due process of law . . . [as] children . . . often require the assistance of counsel to help protect their interests and to help them express their wishes to the court" (Family Ct Act § 241).
We cannot accept the contention that the child is not aggrieved by the Family Court's order awarding sole custody to the mother despite the child's expressed preference that the father remain her custodial parent (see Matter of Alexander Z. [Anne Z.], 151 AD3d at 421; Matter of Angel D. v Nieza S., 131 AD3d at 875; Matter of Baxter v Borden, 122 AD3d at 1418-1419).
The Family Court Should Not Have Held a Full Custody Hearing Without First Addressing Whether the Mother Had Alleged and Shown a Sufficient Change in Circumstances to Warrant an Inquiry into Whether the Child's Best Interests Were Served by the Existing Custodial Arrangement
The Family Court, over the objection of the attorney for the child, proceeded to hold a full custody hearing without first addressing whether the mother had alleged, and, if so, proven, a sufficient change in circumstances to warrant a full inquiry into whether the child's best interests were served by the existing custodial arrangement. This was error.
The standard for modification of an existing custody or parental access order is well known. "In order to modify an existing court-sanctioned custody [arrangement], there must be a showing of a subsequent change in circumstances so that modification is required to protect the best interests of the child" (Henrie v Henrie, 163 AD3d 927, 928; see Matter of Feliciano v King, 160 AD3d 854, 855; Matter of Miller v Shaw, 160 AD3d 743, 744; Matter of Baalla v Baalla, 158 AD3d 676, 677; Weisberger v Weisberger, 154 AD3d 41, 50). While hearings are generally required in cases in which there is no existing permanent order of custody (see S.L. v J.R., 27 NY3d 558, 563), hearings are not automatically required whenever a party seeks a change in custody or parental access (see e.g. Matter of Feliciano v King, 160 AD3d 854; Matter of Resnick v Ausburn, 123 AD3d 728; Matter of Acworth v Kollmar, 119 AD3d 676).
The existence of custody litigation, by itself, can create trauma and uncertainty for the child, as well as trauma, uncertainty, and expense for the parents. Repetitive applications for modification brought by disgruntled litigants in order to harass or vex their former spouses or domestic partners are not unheard of. Litigation over established court-approved child custody and access arrangements can be unsettling and traumatic for children, particularly for children of sufficient age or maturity to comprehend, and worry, about potentially significant changes in their daily lives, such as what home they live in, what family members they live with, what schools they go to, what friends they have, and what activities they undertake. The prospect of having to be interviewed by a judge, consult with counsel, be examined by a forensic clinician, and deal with parents who are embroiled with each other in litigation, can create significant anxiety and stress, which, by itself, may be harmful to a child's development. While courts must be vigilant to assure that children are fully protected and their best interests secured, courts must also consider, in the context of modification petitions, whether an appropriate basis for judicial intervention has been appropriately articulated.
Before subjecting children and their parents to additional litigation, courts require [*5]that, before a full hearing is ordered, the parent seeking a change of custody must make an evidentiary showing of a change in circumstances demonstrating a need to conduct a full hearing into whether a change of custody is appropriate in order to insure the child's best interests (see Henrie v Henrie, 163 AD3d at 928; Matter of Feliciano v King, 160 AD3d at 855; Gentile v Gentile, 149 AD3d 916, 918). In determining whether such a change has occurred, the court should consider the totality of the circumstances (see Matter of Edwards v Edwards, 161 AD3d 979; Matter of Moore v Gonzalez, 134 AD3d 718, 719; Matter of Connolly v Walsh, 126 AD3d 691, 693).
Courts have dismissed modification petitions without a hearing where the allegations, even if assumed to be true, fail to set forth that a material change in circumstances has occurred between the making of the existing court order and the time of the modification application (see Matter of Hugee v Gadsden, _____ AD3d _____, 2019 NY Slip Op 03596 [2d Dept 2019]; Matter of Valencia v Ripley, 128 AD3d 711; Matter of Besen v Besen, 127 AD3d 1076; Matter of Castagnini v Hyman-Hunt, 123 AD3d 926; Macchio v Macchio, 120 AD3d 560; Magee v Magee, 119 AD3d 658; see also Matter of Cruz v Figueroa, 132 AD3d 669). Hearings have been denied, and modification requests dismissed, where the allegations were conclusory and unsubstantiated (see Matter of Feliciano v King, 160 AD3d 854; Nash v Yablon-Nash, 16 AD3d 471) and where the allegations were before the court on a prior occasion and found wanting (see Matter of Acworth v Kollmar, 119 AD3d 676).
Here, before plunging full-bore into a contested custody hearing, the Family Court should have first considered whether the mother's petition for modification alleged sufficient facts which, if established, would have warranted a full inquiry into the existing custodial arrangement. There had been two prior modification petitions filed by mother. While neither of these petitions nor the orders resolving them were included in the original papers furnished to us on this appeal, these documents are in the records of the Family Court. We may, and do, take judicial notice of them. "[C]ourts may take judicial notice of a record in the same court of either the pending matter or of some other action" (Caffrey v North Arrow Abstract & Settlement Servs., Inc., 160 AD3d 121, 126; accord Chateau Rive Corp. v Enclave Dev. Assoc., 22 AD3d 445, 446; Matter of Allen v Strough, 301 AD2d 11, 18).
In her first modification petition, dated October 24, 2014, the mother asserted that there was a change in circumstances based upon the allegation that the father had not been providing the mother with her rightful parental access with the child, and that the scheduled time for weekend parental access pickup of 6:30 p.m. was not suitable for the mother and the child because it caused them to return to the mother's home in New Jersey late in the evening. The resulting order, dated March 9, 2015, found that there had been no change in circumstances with respect to the prior order of custody, but it did direct that the mother's weekend visits with the child take place exclusively at a relative's home in New York and not at the mother's New Jersey residence.
In her second modification petition, dated September 28, 2015, the mother alleged that the discovery of explicit images on the child's phone constituted a change in circumstances that warranted a modification of the prior custody order. This second petition was dismissed by the Family Court in an order dated October 13, 2015, "due to [the] failure to state [a] cause of action." No appeal was taken from the order of dismissal.
The present petition, the mother's third attempt at modification, dated February 16, 2016, alleged that there had been a change in circumstances in that, while in the father's care, the child's hygiene and dental health were poor, she was not completing her homework and was getting into trouble at school, and she had shared semi-nude photographs of herself and of a boy via social media. The mother asserted that she was in possession of school records showing that "the child is in trouble and not getting the attention and guidance she needs," and that the child was sleeping on a blow-up mattress in the father's home.
Because the mother's second and third petitions were brought relatively close together and contained some similar, or overlapping, allegations, the Family Court should have more carefully evaluated the relevant circumstances before directing the commencement of an extensive evidentiary hearing. While it is true that child custody orders are generally not given res judicata effect (see e.g. Matter of Estevez v Perez, 123 AD3d 707) because they are subject to modification, in determining whether there is an appropriate predicate for modification, a primary consideration is whether there has been a change in circumstances since the order sought to be modified was made (see Matter of Hugee v Gadsden, _____ AD3d _____, 2019 NY Slip Op 03596; Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169; Matter of McKenzie v Williams, 165 AD3d 673).
Where a sufficient basis for conducting a modification hearing has been presented, the hearing itself is generally limited to events occurring after the conclusion of the last hearing or proceeding (see Matter of Hugee v Gadsden, _____ AD3d _____, 2019 NY Slip Op 03596; Matter of DiCiacco v DiCiacco, 89 AD3d 937). In this case, the Family Court, if a hearing was required at all, should have confined the scope of the testimony to the changes alleged to have occurred between the determination of the second modification petition and the filing of the third, at least until it was in a position to assess whether a material change in circumstances had occurred sufficient to warrant a full inquiry into whether the existing custody arrangement was in the child's best interests.
The Family Court Failed to Issue an Appropriate Decision and the Record Does Not Support the
Existence of Changed Circumstances
We reiterate the oft-stated proposition that "[f]indings of the Family Court which have a sound and substantial basis in the record are generally entitled to great deference on appeal because any custody determination depends to a great extent on the court's assessment of the credibility of the witnesses and the character, temperament, and sincerity of the parties" (Matter of Agayapon v Zungia, 150 AD3d 1226, 1227; see Matter of Guerra v Oakes, 160 AD3d 855, 856; Weisberger v Weisberger, 154 AD3d at 51). Inherent in the proposition that a reviewing court will give deference to the findings made by the hearing court is that the hearing court issued either a written or oral decision setting forth its findings of fact and conclusions of law (see CPLR 4213[b]). No deference can be given to a decision which does not exist or to findings which were not made.
In this case, the Family Court stated only its conclusion that the mother had established changed circumstances and that awarding custody to the mother was in the child's best interests. Although the court promised that a full decision would follow, no decision was ever issued.
While the Family Court may well have intended to issue a decision at a later date, it should not have directed a change in custody without so much as even an oral articulation of its reasons for that direction. This case was not emergent, and even if it had been and the court had been unable to issue a timely written decision, the court could have placed an oral decision on the record and outlined the basis for its determination. The court failed in its duty to explain its reasoning as to both changed circumstances and best interests (see Matter of Whitaker v Murray, 50 AD3d 1185, 1186-1187; Walash v Walash, 183 AD2d 1, 3; Moheban v Moheban, 149 AD2d 488; McDermott v McDermott, 124 AD2d 715). The parties, the child, and their counsel were entitled to an explanation for the court's upending of the status quo. This Court, in evaluating the likelihood of success on the merits for purposes of the motion for a stay of the determination below, was left to puzzle at the basis for the action taken. Simply put, the Family Court's failure to explain its decision to vastly alter the life of a child by removing her from the home of the custodial parent with whom she had resided for approximately nine years is unacceptable.
The absence of a decision has made our appellate review of the determination appealed from more challenging and burdensome than it would otherwise be (see e.g. McDermott v McDermott, 124 AD2d at 715; see also Matter of Whitaker v Murray, 50 AD3d at 1186; Matter of Machado v Del Villar, 299 AD2d 361). Since this Court's authority is as broad as that of the hearing court (see Matter of Nevarez v Pina, 154 AD3d 854, 855; Trimarco v Trimarco, 154 AD3d 792; Matter of Doyle v Debe, 120 AD3d 676, 680), and since the record is adequate to permit our review and further delay is not in the interest of the child or the parties, we will not remit the matter to the Family Court for factual findings (see Matter of Lewis v Speaker, 143 AD3d 822, 824) and will, instead, make our own.
The record does not support the mother's assertion that the child's dental health and hygiene were poor. No evidence was offered as to the child's dental health. While the mother testified that the child's hygiene was "terrible" and that she was trying to teach the child those skills, these claims were refuted by the father.
Although the child had both academic and behavorial difficulties in school, these difficulties were of long-standing nature and were not due to any failings of the father. The father took appropriate steps to address the child's learning disabilities by working with her teacher and obtaining appropriate services for the child (see Matter of Cooper v Williams, 161 AD3d 1235, 1238 [father did not demonstrate a change in circumstances where the mother did not conceal one child's ADHD diagnosis and there was no evidence that the children's poor school performance was due to the custodial arrangement or failings of the mother]; Matter of Tiffany H.-C. v Martin B., 155 [*6]AD3d 501, 502 [father failed to demonstrate a change in circumstances based on poor school performance where he failed to obtain information about the children's education and where the mother took appropriate steps to address the children's learning disabilities by working with the school and obtaining appropriate services]). The father had sought private counseling for the child based on the school counselor's recommendation, but the services ended because the child missed sessions while she was visiting the mother. The suggestion that the mother might do a better job with these school issues than the father was belied by an episode in which the mother, during a telephone discussion with a family counselor, admittedly cursed at the counselor, ending the discussion with the mother. The counselor continued sessions with the father and the child.
In sum, while the child struggled academically, her difficulties were neither new nor related to the father's parenting; on the contrary, the evidence strongly suggested that the child's academic challenges were long-standing and that the father had developed numerous effective strategies for helping the child and motivating her. Thus, the child's academic struggles did not constitute a change in circumstances (see Matter of Cooper v Williams, 161 AD3d at 1238; Matter of Tiffany H.-C. v Martin B., 155 AD3d at 502).
The record establishes that the father responded appropriately to the discovery of the explicit photographs on the child's phone. When the father picked up the child after the visit during which the mother found the photos, he took away the child's phone and did not give it back to her for approximately five months. He also repeatedly discussed the seriousness of the issue with the child. He also discussed the incident with a private counselor, the school counselor, and the child's teachers. When the father returned the phone to the child, he did not enable Internet access or allow the child to password protect the phone. He also monitored the phone, and there have been no similar incidents. In contrast, although the mother was concerned that the child might again misuse Internet access, the mother did not take the phone away from the child, and had not tried to block Internet access or asked anyone else to do so. The mother was not even aware that parental control restrictions could be implemented, and did not know whether they were in place on the child's phone.
While the child's taking and/or distribution of explicit photos is a matter of concern given the way in which photos can spread on the Internet, the father's response to this incident was much more proactive. While this was a modern-age parenting challenge, there is nothing in the record to suggest that the father handled the situation inappropriately and certainly not to an extent that would constitute a change in circumstances warranting a review of custody (see Matter of Koch v Koch, 121 AD3d 1201, 1202 [father's ability, inter alia, to administer appropriate discipline supported award of custody to him]; Matter of Danielle TT. v Michael UU., 90 AD3d 1103, 1104 [court properly awarded custody to mother who, inter alia, was more likely to follow through with disciplining the children]).
The mother also asserted that she had moved from a location in New Jersey that was approximately three hours from Manhattan to one that was only 45 minutes from Manhattan. The mother's move to a closer out-of-state residence did not constitute a change in circumstances warranting a review of the child's best interests (see Matter of William O. v John A., 151 AD3d 1203, 1204).
The Family Court Erred in Failing to Give Due Consideration to the Teenaged Child's Expressed Preferences
Even assuming that the mother had carried her burden of establishing a change in circumstances, her requested modification of the prior order of custody was not in the child's best interests. The child was clearly well-established in her community in Brooklyn, where she had attended school since second grade, had friends and family, and had a stable home life with the father and paternal grandmother (see Weisberger v Weisberger, 154 AD3d at 54 [maintenance of status quo, while not decisive, is a positive value entitled to great weight]; Lieberman v Lieberman, 142 AD3d 1144, 1145 [same]). Moreover, the record amply demonstrates that the father took an interest in the child's school performance, participating in individualized education program meetings, engaging a math tutor for her, and planning for her transition from middle to high school (see Matter of Anderson v Sparks, 18 AD3d 656, 657 [custody properly awarded to the father where, inter alia, he provided a stable home and enrolled the child in a school in which she was doing well, whereas the mother failed to demonstrate that the child would attend school if left in her care]). The record also establishes that the father was proactive in his response to the child's school behavior, including [*7]the completion of homework, whereas the mother relied on the father to enforce those rules (see Matter of Edwards v Rothschild, 60 AD3d 675, 678 [award of custody to the father was provident where the mother had a good relationship with the children but "had difficulty in setting boundaries and making mature decisions for them," and changing schools would be disruptive]).
The Family Court erred in failing to give due consideration to the expressed preferences of the child, who was 14 and 15 years old at the time of the proceedings in the Family Court, and who communicated a clear desire to remain in the father's custody. As stated in Matter of Nevarez v Pina (154 AD3d at 856), "while not necessarily determinative, the child's expressed preference is some indication of what is in his or her best interests and, in weighing that factor, a court must consider the age and maturity of the child as well as the potential for influence having been exerted on the child." Similarly, in Matter of Turvin v D'Agostino (152 AD3d 610, 611), this Court noted that a 15-year-old child's expressed preference is a relevant factor in determining the child's best interests in connection with issues of custody and relocation (see e.g. Matter of Tofalli v Sarrett, 150 AD3d 1122, 1122 [holding that the Family Court erred in failing to give due consideration to the expressed preferences of children who had demonstrated "maturity and ability to articulate their preferences"]; Matter of Brownell v Manemeit, 142 AD3d 499, 500 ["Particularly relevant in this case is the clearly stated preference of the child, especially considering her age and maturity"]; Matter of Noonan v Noonan, 109 AD3d 827, 829 [finding that the Family Court failed to adequately consider the child's expressed wishes regarding custody]; Matter of Luo v Yang, 103 AD3d 636, 637 [noting that the expressed preference of a 14-year-old child was a relevant factor in affirming a custody award]; Matter of Manfredo v Manfredo, 53 AD3d 498, 500 ["While the express wishes of the child are not controlling, they are entitled to great weight, particularly where the child's age and maturity would make his or her input particularly meaningful" (internal quotation marks omitted)]; Matter of Ortiz v Maharaj, 8 AD3d 574, 575 [noting that the stated preference of a 12-year-old child to live with his father was a relevant factor in a custody determination]).
Conclusion
Therefore, for the reasons set forth above, the order dated December 21, 2017, is reversed, on the law and the facts, and the mother's petition to modify the prior order of custody dated November 14, 2013, so as to award her sole legal and physical custody of the child is dismissed.
BALKIN, HINDS-RADIX and CHRISTOPHER, JJ., concur.
ORDERED that the order dated December 21, 2017, is reversed, on the law and the facts, without costs or disbursements, and the mother's petition to modify the prior order of custody dated November 14, 2013, so as to award her sole legal and physical custody of the child is dismissed.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: We do not address here the circumstance of an attorney who has been privately retained by one of the adult litigants without court sanction (see Davis v Davis, 269 AD2d 82).